ROY LEE WALKER, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 24381

July 22, 1996                    921 P.2d 923

*Lee Elizabeth McMahon,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Roy Walker was tried and convicted on charges of conspiracy to commit burglary, burglary, and robbery with the use of a deadly weapon. Walker's confession, which contained statements regarding his involvement in other crimes for which he had already been acquitted, was entered into evidence. Walker filed a motion in limine requesting that he be permitted to inform the jury that he had been acquitted of these other crimes, and that motion was denied.

We conclude that the district court erred by admitting evidence of Walker's prior bad acts without first conducting a *Petrocelli* hearing and that even if the evidence had been properly admitted after such a hearing, the district court erred in denying Walker's motion in limine to permit him to inform the jury that he had been acquitted of the other crimes.

### FACTS

In late 1991 and early 1992, the Las Vegas Metropolitan Police Department (LVMPD) was investigating several apparently related residential robberies and/or burglaries. The crimes occurred at three different properties owned by Arthur and Mabel Kistler (Kistler), State Farm Insurance (State Farm), and George Kaufmann (Kaufmann), respectively. The crime at issue in this appeal is the one which occurred at Kaufmann's residence on January 2, 1992. Kaufmann testified that he was sitting at home watching television when several men broke down his door, held a gun to his head, and ransacked his house looking for valuables. Kaufmann testified that he could not identify any of the thieves because the activity happened very quickly and the perpetrators covered his head with a blanket so that he could not see anything.

On or about January 17, 1992, LVMPD obtained information from people they had arrested in connection with the three robberies/burglaries describing Walker's complicity in those crimes. Based on that information, LVMPD officers Lewis Roberts, Vinton Hartung, and Michael Karstedt, along with about ten other LVMPD officers, executed a search warrant at the house where Walker lived.

Officers Roberts and Hartung arrested Walker and took him into the kitchen while the remaining officers searched the house. The search, which lasted approximately two and one-half hours,

uncovered no evidence of criminal activity and none of the items that the informant suspects claimed would be found in the house. During the search, Hartung and Roberts talked to Walker in the kitchen, Hartung eventually began to discuss with specificity the three robberies/burglaries that they were investigating, and Hartung told Walker that they had taped confessions from the other suspects which implicated him in those crimes. Walker repeatedly denied involvement in those crimes.

After approximately two and one-half hours of questioning at Walker's home, Hartung and Roberts took Walker to the Clark County Detention Center (CCDC) for further questioning. At CCDC, Walker was placed briefly in a "holding cell" and was then taken to an interview room. Hartung and Roberts reinitiated the interview and told Walker that the police believed that he had participated in the crimes, and Walker asked them how they knew that. Hartung then showed Walker copies of transcripts and tape recorded statements from the other suspects which implicated Walker in the crimes. Hartung stated that after reading the statements, Walker agreed to make a taped confession describing his participation in the crimes.

Hartung and Roberts taped the confession and read Walker his *Miranda* rights on tape at the beginning of the confession. The transcript of the taped confession listed the starting time of the tape at 11:30 p.m. on January 17, 1992, and listed an ending time of 12:03 a.m. on January 18, 1992, a total of thirty-three minutes. The confession tape, however, has a running time of just over twenty-six minutes, a difference of six minutes and forty-two seconds. Hartung testified that the recorder was turned off several times during the confession because the officers had to explain questions that Walker did not understand and furthermore that Officer Roberts was still learning how to conduct taped interviews. Walker, however, testified that the officers turned off the tape recorder in order to tell him what question they were going to ask next and to tell him how to answer the question, allegedly because the police were interested in obtaining incriminating information from him regarding the other suspects.[1]

---

[1]We note that the confession tape does not appear to support the police officers' version of why they stopped the tape. The tape was discernibly shut off eight different times, and the only time where the tape could have been shut off to explain a question to Walker was when it was shut off during the reading of his *Miranda* rights. The other seven times when the tape was shut off were at points where there was no question asked of Walker or just before the officers began a new line of questioning on a new topic. In each of those seven instances, the tape was always stopped *after* Walker was finished answering the previous question and just before the officers asked the next question. Furthermore, throughout the confession Walker showed no signs that he was confused or needed assistance to understand the questions.

During the taped confession, Walker explained the details of the crime committed at the Kaufmann residence and his participation in that crime. After Walker had confessed his involvement in the Kaufmann crime (basically stating that he did not steal anything and that he was only a lookout), the discussion turned to the Kistler and State Farm crimes. The transcript of the confession reads as follows:

> Q. [police officer]. Okay, Roy, I need clarify [sic] one point. How many residential burglaries have you participated in where—meaning that you actually drove to various locations with the other three suspects—to how many of those have you participated in?
>
> A. [Walker]. [Unintelligible] least four, four and—that's, that's it, 'cause it's like two, two that I really went in to and like the other two I like stood as a watch out, you know, by the front door and watched out and all this, you know told 'em what—what, how many minutes they got or whatever. You know it was like I was a punch man.
>
> . . . .
>
> Q. Okay, Roy, in order to help us identify these locations, are you able to give us address—addresses or particular locations where these houses were burglarized that you've done or what part of town they may have been in?
>
> A. [Unintelligible] my knowledge, I probably can show you better than I tell, but [unintelligible] my knowledge that there was one by the Meadows Mall. I don't know what street or address it was and I—the one by the Meadows Mall it's the old man [Kaufmann]. Okay, and then there was one that we did . . . I don't really know the exact place and address, but I can probably show you better than I can [unintelligible].
>
> Q. Okay.
>
> A. Okay, and then there was one—there was one by somewhere like past the Santa Fe Hotel [unintelligible] one out in a desert and there wasn't nobody at home, and [unintelligible] like other places [unintelligible] like in a—like a desert. I don't know exactly—I don't remember because its been a while.

On May 11, 1992, Walker was charged by way of information with six counts related to the burglary/robbery at the Kistler residence, two counts related to the burglary/robbery at the State Farm location, and four counts related to the Kaufmann burglary/robbery. Following a jury trial on July 1, 1992, Walker was acquitted of all of the Kistler and State Farm counts, and the jury deadlocked on all of the Kaufmann counts. The Kaufmann counts were tried to a new jury beginning November 30, 1992.

Prior to the second trial, Walker filed a motion in limine to admit evidence of his prior acquittal of the Kistler and State Farm crimes. Walker's counsel argued that the prosecution's anticipated case in chief would include reference to those events via Walker's confession and that Walker should be able to present evidence of his acquittal on those charges. The prosecution argued that it would not elicit testimony from the victims involved in the Kistler and State Farm crimes and that the only references to those crimes were what Walker admitted were only "minor" references in his confession. The prosecution concluded by arguing that acquittal evidence would be irrelevant and prejudicial. The district judge denied Walker's motion in limine, stating that the prior verdict was the opinion of twelve people based upon what was presented to them or was not presented to them by the district attorney at that time and that the verdict was not relevant in the retrial.

At the conclusion of the second trial, Walker was found guilty of the three counts at issue in this appeal, and the jury deadlocked on the fourth count, conspiracy to commit robbery, which the prosecution later dropped. Walker now argues that the district judge erred by admitting evidence of the Kistler and State Farm crimes without permitting him to admit evidence of his acquittal of those crimes.

## DISCUSSION

Evidence of other crimes committed by a defendant must be determined to be admissible pursuant to NRS 48.045(2).[2] While such evidence usually does not come in the form of statements or confessions made by the defendant, we see no reason to make an exception to this statutory requirement for prior bad act evidence disclosed in a defendant's confession.

Walker objected to the admission of the confession with its references to the Kistler and State Farm crimes, but his objection was overruled. Additionally, the district attorney did not request and the district judge did not require a hearing in the absence of the jury to determine whether the evidence of Walker's prior bad acts—the other crimes mentioned in the confession—was admissible. In Armstrong v. State, 110 Nev. 1322, 1323, 885 P.2d 600,

---

[2]NRS 48.045(2) states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

600-01 (1994) (citing Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985)), this court has stated:

> [B]efore admitting evidence of a prior bad act or collateral offense, the district court must conduct a hearing outside the presence of the jury. During the hearing, the state must present its justification for admission of the evidence, . . . [and] prove by clear and convincing evidence that the defendant committed the collateral offense, and the district court must weigh the probative value of the proffered evidence against its prejudicial effect.

The *Petrocelli* hearing must be conducted on the record to allow this court a meaningful opportunity to review the district court's exercise of discretion. *Armstrong*, 110 Nev. at 1323-24, 885 P.2d at 601.

No *Petrocelli* hearing was held in this case to determine the admissibility of the prior criminal acts and whether their probative value was substantially outweighed by their potential prejudicial effect. Even if such a hearing had been held, it may well have been difficult to find the prior crimes proven by clear and convincing evidence when Walker had been acquitted of the Kistler and State Farm crimes prior to trial. Since no *Petrocelli* hearing was conducted, the district court should have excised reference to the other crimes from Walker's confession, which from our reading of the transcribed statement made by Walker could have been done without much difficulty. This failure to conduct a *Petrocelli* hearing or to properly redact Walker's confession to excise any reference to the other crimes constituted reversible error.

We also conclude that even if the prior bad act evidence had been properly admitted into evidence after a *Petrocelli* hearing, the district judge should have granted Walker's motion in limine and permitted him to inform the jury that he had been acquitted of the other two crimes mentioned in his confession.

Reference was made to the Kistler and State Farm crimes by both parties. Once Walker's confession was admitted into evidence[3] and Walker was not permitted to inform the jury that he had been acquitted of the Kistler and State Farm crimes, Walker's

---

[3]Prior to trial, Walker filed a motion to suppress the confession alleging that his confession was coerced. The district judge denied the motion and admitted the confession in full. Walker challenged the denial of his motion to suppress in this court, and we conclude that the district judge did not err in finding that the confession was not coerced.

counsel's strategy apparently was to attack the investigating police officers' testimony regarding Walker's confession in order to convince the jury that the confession was coerced. In so doing, Walker's counsel questioned the police officers regarding how they obtained information regarding Walker's involvement in the Kistler and State Farm crimes and what they did with that information after they received it. The prosecution also made references to the Kistler and State Farm crimes in its redirect examination of Officer Hartung and more importantly in its rebuttal closing argument. The prosecutor implied that Walker was involved in the other crimes because Walker stated that while he was not able to remember the addresses where the Kistler and State Farm crimes occurred, he could direct the police officers to those locations.

We conclude that once the facts of the Kistler and State Farm crimes were received into evidence, Walker should have been given the opportunity to inform the jury that he had been acquitted of those crimes. *See* People v. Griffin, 426 P.2d 507, 510-11 (Cal. 1967) (stating that evidence of another crime is not made inadmissible by reason of the defendant's acquittal of that crime but that "a properly authenticated acquittal is admissible to rebut prosecution evidence of guilt of another crime"), *abrogated on other grounds by* People v. Chaney, 249 Cal. Rptr. 251 (Ct. App. 1988); State v. Smith, 532 P.2d 9, 11-12 (Or. 1975) (concluding that when the state attempts to prove a defendant's guilt by showing other offenses of which he was charged, the defendant should be permitted to show that he was acquitted of the offenses because "the admission of evidence of other offenses in which the defendant has been involved without disclosing that he was acquitted tends to brand him as a 'criminal' and exposes him to the danger that the jury might lose sight of the presumption of innocence and the high level of proof required to rebut it").

The district court permitted Walker's counsel to ask the officers if they knew whether any charges were presently pending against Walker regarding the Kistler and State Farm crimes which he had confessed to, and the officers either replied that they were unaware if charges were pending or that they knew that charges were not pending. We conclude that such questioning was insufficient to inform the jury that Walker had been acquitted of the other crimes because the jury could have thought that charges were not presently pending because they were disposed of by a conviction or a plea bargain arrangement or that law enforcement had elected to proceed against him only on the charged offense. The introduction into evidence of the Kistler and State Farm crimes in which Walker had allegedly participated clearly left the jury with the impression that Walker had been part of a burglary ring and was probably guilty of committing all of the crimes

mentioned in his statement but was being tried for only one of them. This clearly was error that was prejudicial to the appellant.

## CONCLUSION

The district court erred in not conducting a *Petrocelli* hearing prior to admitting evidence of Walker's prior bad acts. Additionally, even if the evidence of the other burglaries had been properly admitted after a *Petrocelli* hearing, it was error for the district judge to prevent Walker from informing the jury that he had been acquitted of the other burglaries. Therefore, Walker's conviction must be reversed and remanded for a new trial consistent with this opinion.