James KINNEY, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 06SC521.

Supreme Court of Colorado, En Banc.

June 30, 2008.

Douglas K. Wilson, Colorado State Public Defender Andrea R. Manning, Deputy State Public Defender Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General Katherine A. Hansen, Assistant Attorney General Denver, Colorado, Attorneys for Respondent

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this case, we consider whether the court of appeals erred in *People v. Kinney,* 148 P.3d 318 (Colo.App.2006), when it upheld the trial court's admission under CRE 404(b) of testimony concerning two previous sexual assaults by the defendant James Kinney and the trial court's refusal to inform the jury that Kinney had been tried and acquitted of both prior sexual assaults.

We hold that prior act evidence is admissible despite the defendant's acquittal of committing those prior acts. Based on the facts of the case and the nature of the testimony presented, the trial court has discretion to determine whether the jury should be informed of the defendant's acquittal. Here, we conclude that evidence of the prior sexual assaults was admissible but the trial court abused its discretion by refusing to instruct the jury about the acquittals. Therefore, Kinney is entitled to be retried with proper jury instructions.

We also granted certiorari to review the court of appeals' affirmance of the trial court's refusal to allow a prosecution witness, E.S., to be questioned about a pending misdemeanor charge. Because this issue may arise at a new trial, we address it and determine that the court of appeals erred when it upheld this limitation on the cross-examination of E.S. Kinney should have been permitted to question E.S. about the misdemeanor charge that was pending when she testified in the December 2003 trial. The ongoing, significant help that the prosecutor's office had given to the witness when she faced another, earlier charge established that the witness may have been influenced to give testimony favorable to the prosecution because she had a promise of, or hope or expectation of, immunity or leniency with respect to the charges pending against her.

## II. Facts and Procedural History

Kinney was charged with sexually assaulting three women in separate incidents: E.S., M.C., and R.B. The present case involves Kinney's conviction for sexually assaulting R.B. Before trial in this case, he was tried and acquitted in April 2000 of sexually assaulting E.S., and he was tried and acquitted in August 2003 of sexually assaulting M.C.

In the first case, E.S. accused Kinney of sexually assaulting her in February 1999 in Denver. E.S. did not report the crime until she was in jail on an unrelated matter in the summer of 1999. Kinney was charged with sexual assault, but was acquitted in a jury trial in April 2000.[1]

The other two alleged assaults occurred on the same day in December 2002. M.C. claimed that Kinney sexually assaulted her in the early afternoon at his apartment in Sheridan. M.C. then left Kinney's apartment, and used a phone at a neighboring apartment to call the police and report the sexual assault.

After M.C. left, Kinney met R.B. in Denver and they returned to his apartment. There, Kinney and R.B. had sex twice.

As Kinney and R.B. were leaving his apartment that evening, the Sheridan Police arrived on the scene to investigate M.C.'s complaint against Kinney. After the police arrested Kinney, R.B. told the police that she been sexually assaulted by him as well. Later that day, R.B. retracted her allegation and said that the sex had been consensual, a position that she has maintained ever since.

In August 2003, Kinney was tried and acquitted for sexually assaulting M.C. At the trial, the court allowed the prosecution to introduce CRE 404(b) prior act evidence, based on the allegations of E.S. and R.B., to show a common plan or scheme. The trial court ruled that the jury would not be informed that Kinney had been tried and acquitted of assaulting E.S.

In December 2003, Kinney was tried for sexually assaulting the third victim, R.B., which is the case at issue here. The prosecution again filed a motion seeking to introduce

---

1. Because those assaults had yet to occur, neither M.C. nor R.B. testified at that trial.

CRE 404(b) prior act evidence based on the allegations of E.S. and M.C. Kinney objected to the admission of the evidence and requested that he be allowed either to present evidence to the jury of his acquittals or otherwise to have the jury instructed about the outcome of the two previous cases.

The trial court precluded the parties from making any reference to the prior charges or trials. The court acknowledged that the jury might speculate that Kinney had been charged, tried, and convicted because the anticipated testimony included discussions of police involvement in the previous cases, and conceded that it might be advisable to instruct the jury not to speculate as to the circumstances of the other cases. However, the court declined to give a non-speculation instruction, reasoning that it would be sufficient to prohibit both sides from introducing any evidence to the jury that there had been previous charges, trials, or acquittals. Instead, the parties were directed to refer to any witness's testimony at a prior hearing or trial as testimony at a prior "proceeding."

At another pretrial hearing in the R.B. case, the trial court determined that Kinney could cross-examine E.S. about only one of the two cases that were pending against her. Cross-examination was allowed for vehicular eluding, a felony, which was pending in Douglas County. When E.S. testified for the prosecution in M.C.'s case in August 2003, that case was pending as a deferred judgment and sentence, and a bench warrant had been issued for her arrest because she failed to appear for a court date. After the trial in M.C.'s case concluded, representatives from the prosecutor's office accompanied E.S. to court to have the warrant vacated and a summons reinstated. The representatives also appeared on E.S.'s behalf in November 2003 after a second warrant was issued for her failure again to appear for a court date. Altogether, the prosecution's representatives appeared three times in court on E.S.'s behalf between August and December 2003, when R.B.'s case went to trial.

E.S. also had a second pending charge for criminal trespass, a misdemeanor, again filed in Douglas County. During a pretrial conference, the defense requested that it also be allowed to question E.S. about this second case. The prosecution argued that it had "made no promises or inducements" with respect to that case. The defense contended that the lack of a promise or inducement was not dispositive of the matter because the district attorney's assistance in the earlier case might cause E.S. to believe or perceive that her testimony favorable to the prosecution might also lead to a favorable disposition of her second pending case. However, the trial court ruled that the defense could not question E.S. about the pending criminal trespass charge because it was a misdemeanor and the district attorneys had not made E.S. any promises of leniency.

When the trial commenced, the prosecution began its case-in-chief with the testimony of E.S. and M.C., the prior act witnesses, before putting R.B., the actual victim in the case, on the stand. Before E.S. and M.C. testified, the trial court instructed the jury, "This particular evidence may be used as evidence for the purpose of showing lack of consent, common plan or scheme, intent or knowledge, and you should consider it as evidence for no other purpose."

During E.S.'s testimony, she was asked three times about her testimony at a prior "proceeding." She also testified about calling the police regarding the alleged assault and having an investigator assigned to her case. Next, during the testimony of M.C., there were eight exchanges in which M.C. was asked about her testimony at a prior "proceeding." In addition, there was an exchange about whether she had spoken with the prosecutors before she testified in August at the "proceeding." M.C.'s testimony also included extensive discussion of her questioning by the Sheridan Police surrounding this incident, including her experience undergoing a rape examination by a police officer and an emergency room physician.

R.B. then testified. During her testimony, there were nine more exchanges in which her testimony at a prior proceeding was discussed. R.B. testified that the sex had been consensual, again recanting her initial allegations. She testified that she fabricated the accusation of sexual assault to avoid being charged with prostitution. Thus, the prose-

cution impeached her repeatedly with statements that she had previously made to the officer accusing Kinney of rape.

Later, the officer who arrested Kinney while responding to M.C.'s complaint was asked four times about his testimony at a prior proceeding. Kinney's neighbor, from whom M.C. borrowed a phone to call the police, was asked once about his testimony at a prior proceeding. In addition, a detective who investigated the assaults on M.C. and R.B. described obtaining a search warrant in connection with the sexual assaults.

Most of these references to testimony at a prior proceeding came in the form of impeachment of a witness with a prior inconsistent statement. For example, defense counsel in cross-examining M.C., had the following exchange:

Q: Do you recall testifying at an earlier proceeding in front of this judge and these attorneys were present as well back in August, do you recall that?

A: Do I recall testifying then?

Q: Yes.

A: Yes.

Q: At that time you were in front of this judge, correct?

A: Yes.

Q: You were sworn to testify truthfully, correct?

A: Yes.

Q: This court reporter or a court reporter was taking down everything you said, correct?

A: A court reporter, yes.

Q: Okay, and you were asked a question, "What happened next?" And you responded, . . . .

At the close of testimony, Kinney tendered an instruction which stated that he had no prior felony convictions. Defense counsel argued that "the danger in not giving that instruction is that the jury might be left with an impression that there was a trial against Mr. Kinney in those two cases and that somehow he was convicted at that trial and, you know, we've referred numerous times to prior proceedings." The trial court rejected the tendered instruction, stating the defense

was revisiting issues that had already been decided. The court then concluded: "I have not heard anything during the presentation of testimony which would indicate that the Court should necessarily go back to that area and structure some sort of jury instructions which would hopefully counter any undue or improper influence that the testimony may introduce into the jurors' minds."

After two hours of deliberation, the jury sent out a note asking for several items including "prior trial transcripts." Although agreeing with the prosecution that the jury should be told that it had received all of the evidence in the case, defense counsel renewed his request for the trial court to instruct the jury about the acquittals, arguing that because the jury clearly believed that there had been previous trials, the court should cure any possible prejudice by informing the jury that Kinney had been acquitted. The trial court stated that it had "no idea" why the jury would think there had been a prior trial, and again declined to instruct the jury about the acquittals. Two hours later, the jury returned with a verdict of guilty of sexual assault. The trial court then sentenced Kinney to an indeterminate term of sixteen years to life in prison.

Kinney appealed his conviction, arguing that the jury should have been informed that he had been acquitted of sexually assaulting E.S. and M.C. and that his Confrontation Clause rights were violated because he was not permitted to cross-examine E.S. about the misdemeanor criminal trespass charge. A divided court of appeals affirmed the conviction as within the broad discretion of the trial court. *Kinney*, 148 P.3d 318.

Judge Ney, however, concurred in part and dissented in part because he concluded that under the facts of this case, the trial court abused its discretion and violated the defendant's due process rights when it refused to instruct the jury that the defendant had been acquitted of the two prior acts. *Id.* at 325 (Ney, J., concurring in part and dissenting in part). Judge Ney reasoned that the order of the testimony—with the prior act witnesses going first and second, prior to the case's actual victim—as well as the specific nature of the testimony presented and

the jury's request during deliberation to view previous trial transcripts resulted in the trial court's "good faith effort to limit the testimony and exclude any evidence of the previous charges and trial" failing to "protect [the defendant] from the jury's speculation that charges were filed and a trial was held." *Id.* at 326 (Ney, J., concurring in part and dissenting in part).

We granted certiorari to review the rulings by the trial court.

### III. Analysis

Kinney contends that the trial court abused its discretion when it declined to instruct the jury that he had been acquitted of sexually assaulting E.S. and M.C. Under the facts of this case, we agree.

A trial court can admit prior act evidence under CRE 404(b), even though the defendant was acquitted of those acts, and it is within the trial court's discretion to determine whether the jury should be informed that the defendant was acquitted of criminal charges related to the prior act. Here, because of the extensive testimony in the case about witnesses' testimony at prior "proceedings," discussions about criminal investigations and medical examinations concerning E.S. and M.C.'s claims of sexual assault, and the request by the jury during deliberations to see "prior trial transcripts," we conclude that it was an abuse of discretion for the trial court to refuse to instruct the jury that Kinney had been acquitted of the prior acts of sexual assault that had been admitted as evidence.

In addition, Kinney argues his Confrontation Clause right was violated when the trial court ruled that he could not confront E.S. with her pending criminal trespass charge to show bias. Because this issue may arise on retrial, we elect to address it. We agree with Kinney that he should have been permitted to cross-examine E.S. about the pend-

ing charge because the facts in the record demonstrate that her testimony might have been influenced by an expectation of, or hope for, leniency in exchange for favorable testimony against Kinney.

### A. The Court's Refusal to Instruct the Jury that the Defendant Had Been Acquitted of the Prior Acts

#### 1. The Admission of Prior Act Evidence Under CRE 404(b) when the Defendant Has Been Acquitted of the Prior Act

■ The parties agree that the prosecution is not barred by principles of collateral estoppel, double jeopardy, or due process from introducing evidence of a prior act that qualifies for admission under CRE 404(b) even if the defendant was acquitted of the criminal charges arising out of the act. This issue was definitively resolved by the United States Supreme Court in *Dowling v. United States,* 493 U.S. 342, 349–50, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), where the Court held that neither due process nor double jeopardy was violated by the admission of prior act evidence to show a common plan or intent, even if the defendant was acquitted of the criminal charges arising out of the prior act. The court of appeals has twice correctly followed the rule from *Dowling.* *See People v. Wallen,* 996 P.2d 182, 184–85 (Colo.App. 1999); *People v. Conley,* 804 P.2d 240, 244 (Colo.App.1990).

■ Prior act evidence can be admitted even though the defendant was acquitted of the criminal charges arising out of the act, provided that the trial court is satisfied by a preponderance of the evidence, *see* § 16–10–301(4)(b), C.R.S. (2007), that the prior act occurred and the evidence otherwise complies with the four-prong test for admissibility under CRE 404(b), laid out in *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990).[2]

**2.** The four-prong *Spoto* analysis requires that 1) the evidence relates to a material effect, *see* CRE 401; 2) it is logically relevant, making the tendency of a material fact more or less probable than it would otherwise be, *see id.;* 3) its logical relevance is independent of an intermediate inference, prohibited by CRE 404(b), that the de-

fendant has a bad character and that he or she probably committed the charged crime in conformity with his or her bad character; and 4) the evidence's probative value is not substantially outweighed by its prejudicial effect, *see* CRE 403. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990).

## 2. Whether the Trial Court Can or Must Inform the Jury that the Defendant Has Been Acquitted of the Prior Act

What remains unsettled, however, is whether the defendant is entitled to introduce evidence or have the jury instructed by the trial court that he or she was acquitted of the prior act. In the court of appeals' cases of *People v. Wallen* and *People v. Conley*, the record is unclear as to whether an acquittal instruction was requested or given by the court to the jury. Therefore, this is a matter of first impression for Colorado courts.

This issue was not directly addressed by the *Dowling* majority, although the dissent assumed the jury would be instructed on the acquittal. *See Dowling*, 493 U.S. at 362 n. 5, 110 S.Ct. 668 (Brennan, J., dissenting). In that case, the prosecution put forward a prior act of which the defendant had been acquitted. *Id.* at 345, 110 S.Ct. 668. After the prosecution presented the prior act testimony, the trial court "instructed the jury that petitioner had been acquitted of [the prior act], and emphasized the limited purpose for which [the prior act witness's] testimony was being offered." *Id.* at 346, 110 S.Ct. 668. The trial court reiterated this limiting instruction when charging the jury prior to deliberation. *Id.*

Directly at issue in *Dowling* was whether the prosecution was allowed to use the prior act evidence when the defendant had been acquitted of the criminal charges related to that prior act, and not the secondary question of whether a court could or must inform the jury of the prior acquittal. *See id.* at 349–50, 110 S.Ct. 668. However, the Court, in holding that the prosecution was allowed to present the prior act evidence without implicating due process or double jeopardy concerns, stated: "Especially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of [the prior act witness's] testimony merits this kind of condemnation" of being found to violate the defendant's due process rights. *Id.* at 353, 110 S.Ct. 668.

Therefore, it appears that the trial court's limiting instruction about the acquittal was not improper, and was used to bolster the Court's analysis. However, it remains unclear whether such a limiting instruction is always required whenever prior act evidence is admitted and the defendant has been acquitted of that prior act.

Many state and federal courts have examined this issue. Nearly all trial courts have adopted a case-by-case approach in analyzing requests by the defendant for an acquittal instruction, and appellate courts have reviewed trial courts' refusals to give an acquittal instruction for an abuse of discretion. *See generally* 25 A.L.R.4th 934 (listing extensive case law from the several states and federal circuits on whether and when evidence of acquittal of the prior act is admissible).

Generally, federal circuits have found no abuse of discretion when trial courts have not given the requested instruction. *See, e.g., United States v. Wells*, 347 F.3d 280, 285–86 (8th Cir.2003); *United States v. De La Rosa*, 171 F.3d 215, 219–20 (5th Cir.1999); *United States v. Smith*, 145 F.3d 458, 462–63 (1st Cir.1998); *United States v. Tirrell*, 120 F.3d 670, 677–78 (7th Cir.1997). Indeed, some federal circuits have strongly implied that the acquittal evidence may never be admissible. *See Wells*, 347 F.3d at 285–86; *De La Rosa*, 171 F.3d at 219–20. Among the reasons given by these courts are that 1) the evidence is hearsay because it is being offered for the truth of the matter asserted and does not fit into any hearsay exception, 2) it is not relevant because it does not prove innocence—just that the government failed to prove the defendant guilty beyond a reasonable doubt, and 3) the evidence's prejudicial effect substantially outweighs its probative value because the jury may be confused upon learning that a previous jury had found the defendant not guilty of the prior acts. *See Wells*, 347 F.3d at 285–86; *De La Rosa*, 171 F.3d at 219–20; *see also Weinstein's Federal Evidence* § 803.24[7], 803–138 to –140 (2d ed.2008).

State courts, on the other hand, have generally ruled that under the facts of a particular case, a defendant was entitled to an acquittal instruction such that it was an abuse of discretion when no instruction was given. *See, e.g., Hess v. State*, 20 P.3d 1121, 1122–30

(Alaska 2001); *State v. Davis*, 127 Ariz. 285, 619 P.2d 1062, 1063 (App.1980); *Philmon v. State*, 267 Ark. 1121, 593 S.W.2d 504, 507 (App.1980); *People v. Griffin*, 66 Cal.2d 459, 58 Cal.Rptr. 107, 426 P.2d 507, 510–11 (1967); *People v. Bedoya*, 325 Ill.App.3d 926, 259 Ill.Dec. 243, 758 N.E.2d 366, 381 (2001); *Hare v. State*, 467 N.E.2d 7, 18 (Ind.1984); *State v. Washington*, 257 N.W.2d 890, 893 (Iowa 1977); *Nolan v. State*, 213 Md. 298, 131 A.2d 851, 857–58 (1957); *Walker v. State*, 112 Nev. 819, 921 P.2d 923, 927–28 (1996); *State v. Smith*, 271 Or. 294, 532 P.2d 9, 11–12 (1975); *State v. Bernier*, 491 A.2d 1000, 1005–06 (R.I.1985). *But see State v. Anonymous (1978–4)*, 34 Conn.Supp. 689, 389 A.2d 1270, 1274 (1978) (holding there was no error when the trial court declined to give an acquittal instruction); *People v. Bolden*, 98 Mich.App. 452, 296 N.W.2d 613, 617 (1980) (same); *State v. Schlue*, 129 N.J.Super. 351, 323 A.2d 549, 552 (App.Div.1972) (same).

These state courts have ruled that fairness requires that an acquittal instruction be given when the jury is likely to have learned that the defendant was charged criminally for the prior act, noting that *Dowling* "made a point of saying that the trial judge did tell the jury the defendant had been acquitted of the other offenses." *See Bedoya*, 259 Ill.Dec. 243, 758 N.E.2d at 381; *see also Philmon*, 593 S.W.2d at 507 (holding that it was a reversible error not to instruct the jury of the acquittal when the warrant issued in the prior act's case was mentioned by a witness). Other courts have found that the acquittal is relevant because it helps the jury weigh the evidence of the prior act and reasonably infer a greater probability of factual innocence because the defendant was acquitted. *See Hess*, 20 P.3d at 1125; *Griffin*, 58 Cal.Rptr. 107, 426 P.2d at 511; *Hare*, 467 N.E.2d at 18; *Nolan*, 131 A.2d at 857–58; *Bernier*, 491 A.2d at 1005–06.

Regarding the hearsay argument, most states have not even addressed the argument, implying that they either have not considered it or have determined it to be such a settled issue that it does not merit discussion. Among the few states that have considered the issue, they have held that a judgment of acquittal should be treated no differently than any other properly authenticated official document, which is admissible as an exception to the hearsay rule. *See Griffin*, 58 Cal.Rptr. 107, 426 P.2d at 510–11; *accord* 5 John H. Wigmore, *Evidence* § 1671(a), 806–13 (Chadbourn rev.1974); *see also* CRE 803(8) (Colorado's official records exception); *cf. Hess*, 20 P.3d at 1126 (holding that an acquittal is not hearsay because it is not testimonial, but rather is an act to which the law attaches legal significance, and because it is not offered to show the defendant is innocent, but rather to challenge the weight of the prior act witness's testimony).

Courts have also held that the evidence of acquittal has significant probative value for the jury in weighing the prior act evidence, and thus its value is not substantially outweighed by its prejudicial effect. *See Hess*, 20 P.3d at 1127–29; *Griffin*, 58 Cal.Rptr. 107, 426 P.2d at 511. Moreover, other courts have rejected the juror confusion argument, concluding that the risk of confusion is not so great as to prevent the defendant from informing the jury that he was in fact acquitted of the underlying offenses. *See Walker*, 921 P.2d at 927–28 (holding that introducing prior act evidence without informing the jury of acquittal "left the jury with the impression that [the defendant] had been part of a burglary ring and probably guilty of committing all of the crimes mentioned"); *Smith*, 532 P.2d at 12.

Therefore, although outcomes have varied, the majority rule among the states and federal circuits is that a trial court should make a case-by-case decision as to whether informing the jury of the acquittal is required, with that decision reviewed by appellate courts for an abuse of discretion. Both the majority and the dissent in the court of appeals, as well as the People and Kinney in their briefs before us, agree that this is the proper standard.

Although the parties agree on the rule to be applied, they differ on which outcome is proper after applying that rule. The People, principally citing the federal circuit cases, allege it was not an abuse of discretion for the trial court to decline to instruct the jury of Kinney's previous acquittals because such evidence was hearsay, irrelevant, and its pro-

bative value was substantially outweighed by its prejudicial effect. The People further posit that the trial court's decision was not an abuse of discretion because the trial court had effectively prevented the jury from learning that Kinney had been tried for the prior acts, thereby preventing juror speculation as to the prior trials' outcomes.

Kinney, on the other hand, cites to the state court cases and asserts that the instruction was not impermissible hearsay, that it was relevant, and that its probative value was significant and not outweighed by its possible prejudicial effect of confusing the jury. Kinney further argues that because of the testimony presented at trial, as reflected by the jury's request during deliberations for "prior trial transcripts," it was an abuse of discretion for the trial court to deny an instruction in this case because the jury had concluded that Kinney had been charged with the prior acts and was likely speculating as to the previous trials' outcomes.

■ We hold that the trial court should determine whether to give an acquittal instruction or permit other evidence of the acquittal on a case-by-case basis, and that there is not a per se rule either always requiring an instruction or always ruling such evidence inadmissible. Appellate courts will review the trial court's decision for an abuse of discretion. Although we do not require that in every instance where a prior act has been introduced for which the defendant had been acquitted, the trial court should inform the jury, we do reject the federal circuits' stance that an instruction is essentially never required. An acquittal instruction is appropriate when the testimony or evidence presented at trial about the prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act and may be speculating as to the defendant's guilt or innocence in that prior trial.

In adopting the majority rule from state courts, we note again that the trial court in *Dowling* instructed the jury that the defendant there had been acquitted of the prior act, and the Supreme Court, rather than rejecting that instruction as hearsay, irrelevant, or prejudicial, instead cited it as one of the factors it considered persuasive in finding that the introduction of the prior act evidence, despite the defendant's acquittal, did not violate due process. *See Dowling,* 493 U.S. at 346, 353, 110 S.Ct. 668; *Bedoya,* 259 Ill.Dec. 243, 758 N.E.2d at 381.

■ Further, we find that the admissibility concerns raised by the federal circuits in general and the prosecution in this case are not persuasive. Regarding the relevancy issue, we believe that the evidence would be relevant because it would make it less probable that the prior act occurred as the testifying witness has alleged that it did.

■ Regarding the hearsay issue, we note that CRE 803(8)'s exception for public records and reports would include judgments of acquittal. In addition, even if the acquittal is not covered by the official records exception, our decision in *Banek v. Thomas,* 733 P.2d 1171 (Colo.1986), is instructive here. In *Banek,* a civil suit for police brutality, we held that even though the plaintiff's misdemeanor conviction for resisting arrest during the incident at issue was inadmissible hearsay under Colorado's Rules of Evidence, it could still be admitted for the limited purpose of impeaching the plaintiff's claim that he had not used force when the police were attempting to arrest him. *Id.* at 1175–77. We stated, "We recognize, of course, that the distinction between excluding evidence for one purpose and admitting the same evidence for another may be a subtle one at times, but it is a distinction that our case law has recognized and applied in various contexts." *Id.* at 1177. Similarly here, the fact of acquittal, even if arguably inadmissible for the truth of the matter asserted because it does not fall within an exception to the hearsay rule, could still be admitted for the limited purpose of challenging the weight the jury should give the prior act evidence presented at trial. *Accord Hess,* 20 P.3d at 1126.

■ Finally, the evidence's probative value is significant where the jury has heard details of prior trials or criminal investigations such that the jury may speculate that the defendant has been tried and convicted of these prior acts. Moreover, any juror confusion from giving the instruction would not be

so prejudicial that it would substantially outweigh the instruction's probative value. In addition, a trial court concerned with juror confusion could give a thorough instruction that the jury should not necessarily presume that the defendant was factually innocent because he or she was acquitted of prior acts by a previous jury, but rather that the previous jury determined for whatever reason that the state failed to prove guilt beyond a reasonable doubt.

Thus, we review for an abuse of discretion the trial court's order denying Kinney a limiting instruction that he had been acquitted of sexually assaulting E.S. and M.C. A trial court's discretionary ruling will not be overturned unless it is manifestly arbitrary, unreasonable, or unfair. *People v. Welsh*, 80 P.3d 296, 304 (Colo.2003).

### 3. Application

Here, Kinney argued before and during the prior act witnesses' testimony, before closing arguments, and during deliberations that the jury needed to be instructed that he had been acquitted of sexually assaulting E.S. and M.C. The trial court continued to refuse the instruction, asserting that its preventive measure of having the parties refer to prior trials as prior "proceedings" meant that the jury would not speculate as to whether the defendant had been charged and found guilty of the prior acts.

Considering the facts of this case, the refusal by the court to instruct the jury about the prior acquittals was manifestly arbitrary, unreasonable, or unfair. Whatever the initial wisdom of the court's decision, the testimony presented at trial strongly undermined the trial court's efforts to prevent juror speculation that there had been previous trials. During the three-day trial, the jury heard no fewer than twenty-five different exchanges about witnesses' testimony at prior "proceedings," including eight times by M.C., three times by E.S., and once by Kinney's neighbor who testified about M.C.'s alleged assault. These references to prior proceedings were often raised to impeach a witness who had made a prior inconsistent statement, resulting in not just a passing reference to a prior proceeding, but rather a lengthy colloquy establishing that the witness had previously testified, under oath, before the same trial judge, with a court reporter present, and had made contradictory statements. The jury also heard references to a search warrant for multiple sexual assaults by the officer investigating both the M.C. and R.B. cases, implying that both cases were being pursued criminally. E.S. and M.C. both testified to having interactions with officers investigating their claims, including M.C.'s in-depth discussion of her physical examination by an officer and physician.

As a result, the jury during deliberations sent out a note requesting "previous trial transcripts," to which the court responded that it had "no idea" why the jury would think there had been a prior trial, and again declined Kinney's request to instruct the jury about the acquittals. We find the jury's inquiry understandable. After hearing so many references to prior proceedings and so many other indications that Kinney had been the subject of criminal proceedings for the alleged assaults on E.S. and M.C., the jury reasonably presumed that there had been previous trials and thus requested the transcripts from those previous trials. As Judge Ney concluded in his dissent in the court of appeals, "The record demonstrates the jury not only speculated, but also concluded that in fact there had been a trial." *Kinney*, 148 P.3d at 326 (Ney, J., concurring in part and dissenting in part).

In sum, the trial court's efforts to prevent the jury from speculating as to whether Kinney had been charged criminally with the prior acts were unsuccessful. As a result, the court's continued refusal to inform the jury about Kinney's acquittals in the prior cases was an abuse of its discretion because the refusal was manifestly arbitrary, unreasonable, or unfair.

### B. The Defendant's Right to Confront an Adverse Witness with a Pending Misdemeanor Case

The right of the defendant to confront witnesses against him or her is guaranteed by both the Sixth Amendment of the United States Constitution and article II,

section 16, of the Colorado Constitution. *People v. Fry,* 92 P.3d 970, 974 (Colo.2004); *see People v. Cobb,* 962 P.2d 944, 950 (Colo. 1998). The primary interest secured by the right to confrontation is the right of cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *see Fry,* 92 P.3d at 975. Generally, under our rules of evidence, all relevant evidence should be admitted unless its probative value is substantially outweighed by its prejudicial effect. *See* CRE 401, 402, 403; *Merritt v. People,* 842 P.2d 162, 166 (Colo.1992). However, the scope and duration of cross-examination is controlled by the trial court, and judges have wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination because of concerns about harassment, prejudice, repetition, or marginal relevance. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Cobb,* 962 P.2d at 950; *Merritt,* 842 P.2d at 166. Nevertheless, a trial court can err when it prohibits or severely limits inquiry into the potential bias of the witness. *See Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431.

Although evidence of pending charges cannot be admitted to challenge a witness's general credibility, this evidence is admissible to show a witness's motive, bias, prejudice, or interest in the outcome of a trial. *People v. Bowman,* 669 P.2d 1369, 1375 (Colo.1983); *see Davis,* 415 U.S. at 316, 94 S.Ct. 1105. Indeed, the partiality of a witness is always relevant to discredit that witness and affect the weight the jury might place on his or her testimony. *Davis,* 415 U.S. at 316, 94 S.Ct. 1105.

An arrest or pending charge against a witness, without more, is not sufficient for it to be admissible. *People v. King,* 179 Colo. 94, 98, 498 P.2d 1142, 1144 (1972). However, the trial court should allow broad cross-examination regarding the witness's motive for testifying whenever the witness has a pending case and his or her "testimony against the defendant *might be influenced* by a promise of, or hope or expectation of, immunity or leniency with respect to the pending charges against him, as a consideration for testifying against the defendant." *Id.,* 498

P.2d at 1144–45 (emphasis added); *see Bowman,* 669 P.2d at 1375.

A defendant makes out a Confrontation Clause violation by showing that he or she "was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences related to the reliability of the witness.' " *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431 (quoting *Davis,* 415 U.S. at 318, 94 S.Ct. 1105). The focus of the Confrontation Clause analysis is on the individual witness, and thus a court's prejudice inquiry into whether the defendant's confrontation right has been violated is also focused on the individual witness, not on the outcome of the entire trial. *Id.; Merritt,* 842 P.2d at 166. The error is prejudicial when a reasonable jury would have had a "significantly different impression" of the witness's credibility had the defendant been allowed to pursue the desired cross-examination. *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431.

Here, Kinney wanted to confront E.S. with two cases pending against her: the vehicular eluding case (which was then a deferred judgment and sentence) and the recent charge for criminal trespass. The trial court, however, only permitted questioning with regard to the vehicular eluding case. Kinney argued that although no formal offer for a favorable disposition had been made by the prosecution with respect to the new criminal trespass charge, E.S. might have had an expectation that such a favorable disposition would be forthcoming because of the substantial help that the prosecutor's office had recently given her with her pending case for vehicular eluding, particularly in twice persuading a trial court to quash warrants for E.S.'s arrest.

The trial court agreed with the prosecution that the defense could not question E.S. about the pending criminal trespass charge, reasoning that it was a misdemeanor and the district attorneys "have indicated there has been no discussion of leniency or anything of that nature."

The court of appeals affirmed the trial court's ruling as being within its broad discretion. Although not specifically explaining its reasoning, the court of appeals seems to have concluded that defense counsel failed to show a nexus between the pending charge and an influence on E.S.'s testimony against Kinney because the prosecution claimed that it had not promised E.S. a favorable disposition of her pending misdemeanor case in exchange for testifying, and the defense had not made an offer of proof or elicited testimony from E.S. outside the presence of the jury to substantiate its claim of influence.

We reject the court of appeals' analysis and ruling. We find that the court of appeals misconstrued our holding in *People v. King*, which only requires that the defendant show that the witness's "testimony *might be influenced* by a promise for, or hope or expectation of, immunity or leniency with respect to the pending charges against [the witness]." 179 Colo. at 98, 498 P.2d at 1144–45 (emphasis added). Instead, the court of appeals required that the defendant show either that an explicit promise has been made by the prosecution to provide the witness immunity or leniency in exchange for favorable testimony or that the defendant make an offer of proof in which the witness actually admitted that his or her testimony was being influenced by hopes of leniency from the prosecutor regarding the pending charge. Put another way, the court of appeals erred when it required the defendant show with certainty, rather than merely show the possibility, that the witness's testimony was being influenced by a promise for, or even only mere hope or expectation of, leniency with the pending charge in exchange for favorable testimony against the defendant.

Here, E.S. had twice in the four months between M.C.'s trial and R.B.'s trial faced an arrest warrant for failure to appear in her pending vehicular eluding case. Both times, the prosecutor's office helped her by having the warrant quashed and a summons reinstated, thus enabling E.S. to avoid being sent to jail. During this time frame, E.S. was charged with criminal trespass, again in Douglas County. Based on these facts, it is reasonable to conclude that E.S.'s willingness to testify again for the prosecution might have been influenced by a hope or expectation of leniency with respect to the second pending charge, just as the prosecution had recently helped E.S. with her other pending case. In sum, these facts were more than sufficient to satisfy *King's* "might have been influenced" nexus requirement, and thus, the trial court erred by preventing Kinney from questioning E.S. about the pending criminal trespass case.

Relevant prior case law cements our conclusion that the court of appeals demanded far more certainty in the nexus between the pending charge and the influence on the witness's testimony than has been required in the past. In the United States Supreme Court case of *Delaware v. Van Arsdall*, the key witness had a pending charge dropped but claimed that this fact would not influence his testimony. 475 U.S. at 676, 106 S.Ct. 1431. As a result, the trial court declared the matter irrelevant and prevented the defendant from cross-examining the witness on this matter. *Id.* The Supreme Court held that this ruling was a violation of the Confrontation Clause because a reasonable jury would have had a "significantly different impression" of the witness's credibility had the defendant been allowed to pursue his desired cross-examination, even though the witness denied that the dismissal of the pending charge would influence his testimony. *Id.* at 680, 106 S.Ct. 1431.

In another United States Supreme Court case, *Davis v. Alaska*, the defendant wanted to show that a key identification witness was on juvenile probation and *may* have testified out of fear or to divert suspicion from himself, although the defendant apparently made no offer of proof on this point. *See* 415 U.S. at 310–11, 94 S.Ct. 1105. The Court reversed the trial court's ruling that the evidence was inadmissible, instead concluding that precluding cross-examination on the witness's juvenile probation meant that the jury might well have thought that defense counsel was attacking an apparently blameless witness, when in fact the witness's testimony might have been influenced by his probation status. *Id.* at 318, 94 S.Ct. 1105.

Case law from this court has been consistent with the holdings in *Van Arsdall* and *Davis*. In *King*, it was reversible error when the trial court precluded the defendant from cross-examining the key prosecution witness about four pending cases, even though the prosecution had stated on the record that it was offering the witness no promises of leniency or immunity in exchange for his testimony. 179 Colo. at 97, 498 P.2d at 1144. Similarly, in *People v. Bowman*, it was reversible error when the defendant could not confront a key witness who faced a pending criminal charge and was involved in an informal diversion program for a second offense, even though it was undisputed that there had been no promise by the prosecution for favorable disposition of these cases in return for testifying. *See* 669 P.2d at 1376.

In sum, in both our opinions and those of the United States Supreme Court, reviewing courts have not demanded the level of certainty in the nexus between the pending case and the witness's testimony that the court of appeals required here. Even when there has not been an explicit promise of leniency made by the prosecution, an offer of proof or testimony by the witness articulating an expectation for leniency has not been required. Rather, reviewing courts have examined whether the particular facts of the case show that the witness's testimony might have been influenced by a promise for, or simply a hope or expectation of, leniency in exchange for favorable testimony. This standard was met here by the circumstances surrounding E.S.'s two pending cases and the recent, repeated, and substantial help that the prosecutor's office had afforded to E.S. before she testified in this matter.

Therefore, the trial court's ruling was an improper denial of the defendant's constitutional right to confront and impeach a witness through cross-examination. If E.S. testifies at the new trial, Kinney must be permitted to question her about the misdemeanor charge for criminal trespass that was pending when she testified at the first trial in this case.

## IV. Conclusion

We hold that a trial court can admit prior act evidence, even though the defendant was acquitted of the criminal charges arising out of the prior act. The trial court, however, must make a case-by-case decision whether to instruct the jury that the defendant was acquitted of the prior act, a decision which will be reviewed on appeal for an abuse of discretion. Here, it was an abuse of discretion for the trial court not to instruct the jury on the acquittals because the jury, based on the nature of the testimony presented at trial, likely concluded that the defendant had been charged criminally in the prior acts and was speculating as to the outcome of those proceedings. To provide guidance on retrial, we also hold that Kinney's constitutional right to confront a witness against him was violated when the trial court ruled that he could not cross-examine E.S. about a pending criminal trespass charge that might have influenced her testimony. We therefore reverse the court of appeals' judgment and remand this case with instructions to return it to the trial court for a new trial.

Justice EID concurs in part and concurs in the judgment in part.

Justice EID, concurring in part and concurring in the judgment in part.

I disagree with the majority that evidence of acquittal is generally relevant. Maj. op. at 557. "Judgments of acquittal are not generally relevant, because they do not prove innocence; they simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir.2003) (citation omitted). However, acquittal evidence does become relevant when, as the majority points out, "the testimony or evidence presented at trial about the prior act indicates that the jury has likely learned or concluded that the defendant was tried for the prior act...." Maj. op. at 557. Thus, in my view, this case presents an exception to the general rule. I therefore concur in the judgment as to part III.A of the majority's opinion, and join the remainder of its opinion.