# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
November 19, 2019 Session[1]

## STATE OF TENNESSEE v. STEVE M. JARMAN

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Dickson County**
**No. 2015-CR-585          Larry J. Wallace, Judge**

_____

### No. M2017-01313-SC-R11-CD

_____


Steve M. Jarman ("defendant") was convicted of voluntary manslaughter for the death of his girlfriend, Shelly Heath ("victim"). At trial, the State was permitted to introduce evidence that the defendant allegedly assaulted the victim two years prior to her death, an act for which he was tried and acquitted. The defendant appealed his conviction, and the Court of Criminal Appeals reversed based, in part, on the acquitted-act evidence being used at trial. We accepted the State's appeal to consider two issues: (1) whether the rule announced in State v. Holman, 611 S.W.2d 411 (Tenn. 1981), which prohibits the use of acquitted-act evidence against a defendant at a subsequent trial, should be overruled, and (2) if so, whether the trial court properly admitted the acquitted-act evidence as a prior bad act under Tennessee Rule of Evidence 404(b). After a thorough review of the case law in this area and the record before us on appeal, we expressly overrule our decision in Holman to the extent that it prohibits the use of acquitted-act evidence against a defendant in a subsequent trial under all circumstances. Additionally, we hold that it was not an abuse of discretion for the trial court to admit the acquitted-act evidence, pursuant to Rule 404(b), under the theory that it was relevant to show the defendant's intent. We also hold that additional errors in admitting threats made by the defendant against the victim or the victim's sister, not at issue in this appeal, were harmless. For reasons stated herein, we reverse the Court of Criminal Appeals' decision and reinstate the defendant's conviction.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Reversed**

---

[1] We heard oral argument in Kingsport, Tennessee, as part of the Court's S.C.A.L.E.S. project. S.C.A.L.E.S. stands for the Supreme Court Advancing Legal Education for Students.

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Clark B. Thornton, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Carey Thompson and Brooke Orgain, Assistant District Attorneys General, for the appellant, State of Tennessee.

Olin J. Baker, Charlotte, Tennessee, for the appellee, Steve M. Jarman.

## OPINION

### I.   BACKGROUND

The defendant and victim were in a relationship for approximately four years and lived together in the defendant's home in Dickson County, Tennessee. In the early morning hours of April 18, 2015, the defendant called 9-1-1 and told the dispatcher that he needed assistance because the victim had shot herself. Emergency responders and law enforcement attempted life-saving measures on the scene but were not successful. The victim died from a single gunshot wound to the chest. While law enforcement initially believed the gunshot wound was self-inflicted, the investigation ultimately led to the defendant being arrested and charged with first-degree murder of the victim. Before trial, the State gave notice that it intended to introduce evidence of prior bad acts of the defendant, including an alleged aggravated assault by the defendant against the victim that occurred in 2013 ("2013 alleged assault") and evidence that the defendant allegedly threatened the victim and the victim's sister on two occasions.[2] At the pre-trial hearings and the jury trial, the following evidence was adduced.

### A.   Pre-trial Hearing

In response to the State's notice that it intended to introduce evidence of prior bad acts, the defendant filed a motion in limine seeking to preclude the State "from introducing any and all prior convictions, alleged bad acts, and / or expunged matters." The defendant

---

[2] The State also sought to introduce evidence that the defendant attempted to cash a check made out to the victim days after the victim's death. A full discussion of this issue and recitation of the facts at trial can be found in the Court of Criminal Appeals' opinion at State v. Jarman, No. M2017-01313-CCA-R3-CD, 2018 WL 5885903, *1 (Tenn. Crim. App. Nov. 8, 2018), perm. app. granted (Tenn. Mar. 27, 2019).

argued that the State should not be allowed to admit evidence of the 2013 alleged assault because he was acquitted of the charge. Specifically, the defendant argued that the acquitted-act evidence should not be allowed because "[o]nce the jury verdict [was] laid down, that resolved any question of fact[,]" and whether the defendant committed the assault was "not an issue that you could relitigate."

The State argued that it did not seek to introduce the charge or the previous trial into evidence, rather it sought to present the defendant's alleged actions and that the couple had "a history of prior domestic violence" in their relationship. The State explained that the victim's brother, Paul Heath, who did not testify at the trial on the 2013 alleged assault, witnessed the act and would testify to what he observed.

Additionally, the State argued that under Tennessee Rule of Evidence 404(b),[3] the defendant's actions during the 2013 alleged assault were relevant to issues of intent and motive in the present case. The State relied on two cases, State v. Smith, 868 S.W.2d 561 (Tenn. 1993), and State v. Moody, No. W2014-01056-CCA-R3-CD, 2016 WL 1045660, *1 (Tenn. Crim. App. Mar. 15, 2016), perm. app. denied (Tenn. Aug. 19, 2016), which both involved murder victims who were previously harmed by the accused through acts of domestic violence. In both cases, the court permitted evidence of prior acts of domestic violence, as well as statements made by the victim and other family members regarding the victim's fear of the accused, as relevant to show the relationship between the parties

---

[3] Tennessee Rule of Evidence 404(b) states:

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

- 3 -

and the intent of the accused to harm the victim.[4] The State also argued that the evidence was necessary to rebut the defendant's claim of suicide or that the gunshot wound was self-inflicted.

Prior to taking testimony at this hearing, the trial court compared the 2013 alleged assault and the 2015 death of the victim, stating:

> [F]or the record . . . the gap in time, [sixteen to seventeen] months, is not a real long time considering what -- domestic violence type issues because the [c]ourt sees them a lot as a Judge, of course, so that's not a real long time. And the [c]ourt believes that that potential testimony by [Mr. Heath] could show motive and intent and believes that the probative value would probably be high. Of course, the prejudicial value could also be high too.

The court stated that acquitted-act evidence "'should not be admitted, at least absent clear and convincing proof that the offender actually committed the other acts.'"[5] Ultimately, the court decided to reserve its ruling on the admissibility of the evidence until it "hear[d] from the witness [who] allegedly saw the defendant choke the victim."

The State called multiple witnesses, starting with Deputy Joseph Calhoun, the responding officer on December 6, 2013, the night of the 2013 alleged assault. The call came in to Deputy Calhoun as a "domestic assault in progress," and when he got close to the location, he "observed a white female walking in the middle of the road." He stopped to speak with her, and "learned that it was [the victim] . . . [and] that she was the one that called for help." According to Deputy Calhoun, the victim "appeared to be very upset," and he was able to "smell the odor of alcohol coming from her person." Additionally, "[the

---

[4] Of note, neither State v. Moody nor State v. Smith involved admitting evidence of a prior domestic assault for which the defendant was acquitted, and in both Moody and Smith, there were two to three prior instances of domestic violence between the victim and defendant. In this case, there is only one instance of domestic violence.

[5] The trial court relied on Neil Cohen et al., Tennessee Law of Evidence, § 4.04(8)(f) (LexisNexis Matthew Bender 6th ed. 2011), which cites to Dowling v. United States, 493 U.S. 342 (1990), State v. Shropshire, 45 S.W.3d 64 (Tenn. Crim. App. 2000), and State v. Holman, 611 S.W.2d 411 (Tenn. 1981), for this proposition. In a parenthetical explaining the Holman decision, the authors conclude that the case left the door open for acquitted-act evidence to potentially be admitted when the acquittal was not based on insufficient evidence.

victim] had stated that she had been assaulted by [the defendant] and that she was walking to 990 Coaling Road to get away from him." Deputy Calhoun recalled the victim's story:

> [H]er and her brother . . . had been in the living room consuming alcohol and [the defendant] was in his bed asleep. She said that [the defendant] awoke, come [sic] in there and they started verbally arguing. [The defendant] then grabbed her by the throat, started choking her, and she said she fell back into a recliner at which time her – I believe it was her right arm went through a glass window and a door. [The defendant] then put her on the floor and proceeded to kick her in her rib area.

As the victim recounted the story that night, Deputy Calhoun observed injuries "consistent with a hand around the throat" and "lacerations to her arm." Additionally, Deputy Calhoun saw the victim "holding her ribs" as he spoke with her. He called an ambulance to come to the scene, and the victim went to the emergency room. Based on the consistencies between the victim's statements and her physical injuries, Deputy Calhoun arrested the defendant for aggravated assault.

On cross-examination, Deputy Calhoun stated that he did not interview the defendant or any other witnesses that evening. Deputy Calhoun was present at the trial for the 2013 alleged assault and acknowledged that the victim recanted her statement and claimed that she was lying the night of December 6th when she told Deputy Calhoun the defendant assaulted her. Even though Deputy Calhoun heard the victim recant her statement during the trial, he still believed her December 6, 2013 statement was the truth, based on the consistencies between her statements and injuries at the time. Deputy Calhoun admitted that he transcribed the victim's statement that night and that he may have paraphrased it but assured the court that "what she told [him] was put in that statement." Additionally, he read it back to the victim before she signed it.

Mr. Heath, the victim's brother, testified that he was present in the defendant's house the night of December 6, 2013. He described that he "seen [sic] [the defendant] choke [the victim], beat her in the face, and then boot stomp her." According to Mr. Heath, the fight started because the defendant gave the victim a fifth of whiskey, and Mr. Heath and the victim drank it all. When the yelling started, Mr. Heath was out on the porch making a phone call so he did not observe how the physical altercation began, but he testified that he saw the defendant "choking her and then he hit her with his fist a few times, and then he boot stomped her." He also observed the victim "bleeding pretty bad" afterward.

- 5 -

Aside from the 2013 alleged assault, Mr. Heath acknowledged that he had not observed any other instances of physical violence between the defendant and victim, but he did hear the defendant threaten to shoot the victim on at least one occasion. Mr. Heath could not remember when the threat occurred, but he believed the defendant threatened the victim at least once while he was living with the couple in 2015, shortly before the victim's death. Regardless, Mr. Heath stated that he did not believe that the defendant would really hurt the victim and that the defendant was just "popping off at the mouth."

While Mr. Heath was living with the couple in 2015, the victim told Mr. Heath that she was going to move out of the house and move in with Mr. Heath to help take care of him. The court questioned Mr. Heath directly about the victim's desire to move out of the defendant's house.

> COURT: She said that she was going to be moving out?
>
> HEATH: (nods head)
>
> COURT: And what was the time –
>
> HEATH: And to help take care of me.
>
> COURT: And what was the time frame on that again, was that near the time of this incident with the boot stomping?
>
> HEATH: Yes. It was near the time – I think – now I may be speaking out of turn, but I think the night that she got killed, that she told [the defendant] that she was going to be moving in with me.
>
> COURT: Okay
>
> HEATH: And he knew that I had my house and housing papers.

The court clarified with Mr. Heath that the 2013 alleged assault and the victim's death occurred approximately sixteen to seventeen months apart, and Mr. Heath stated he was aware of that. Mr. Heath also testified that the defendant threatened to "shoot up" the car of his other sister, Stephanie Jackson, if she came to pick him up from the defendant's house when she was helping him look for a place to live.

- 6 -

On cross-examination, Mr. Heath confirmed that he has memory problems as a result of a serious car accident and that he has been charged with more than two domestic assault charges. Mr. Heath further admitted that he was drinking the night of the 2013 alleged assault, although not heavily due to his diabetes. Mr. Heath said that he was not with the victim or at the defendant's house when police arrived that night because he left, under the mistaken belief that he had a warrant out for his arrest. Additionally, he did not appear at the trial on the 2013 alleged assault because the court did not have his correct address to send a subpoena. Mr. Heath also stated that, although the defendant recanted the threat he made to "shoot up" Ms. Jackson's car, she still decided to pull onto a nearby road to pick him up rather than pull in the defendant's driveway.

Stephanie Jackson, the victim's sister, confirmed that, shortly before her death, the victim was planning to move out of the defendant's home once she received an insurance check and in with Mr. Heath. Additionally, Ms. Jackson stated that the defendant threatened her when she was helping Mr. Heath find a place to live because, she believed, the defendant knew the victim was going to move out if Mr. Heath found a place to live. Ms. Jackson also believed she overheard the defendant make another threat to "take care of both of them," referring to herself and the victim, just a few hours before the victim was killed. Ms. Jackson admitted on cross-examination that she was not certain to whom the statement was directed and that the defendant did not use names when he made the statement.

Lastly, Terrenda Duncan, another sister of the victim, testified that the victim stayed with her for six to eight weeks to heal from the 2013 alleged assault, and she witnessed bruises and physical injuries on the victim's body. Ms. Duncan, however, was not present when the assault occurred.

At the conclusion of the pre-trial hearing, the trial court determined that Deputy Calhoun was permitted to testify about the 2013 alleged assault but only "regarding observations about injuries of the [the victim]," the "reason he was called to the defendant's residence on that date, and evidence of the defendant's acquittal on the resulting charges." The court recognized that while the testimony was prejudicial to the defendant, the probative value of Deputy Calhoun's statements outweighed the prejudicial effect and the evidence of what Deputy Calhoun observed was clear and convincing. Therefore, the court stated that his testimony was admissible under Rule 404(b) to prove the defendant's motive and intent.

The court stated:

I don't know how, you know, you get around [Deputy Calhoun] not getting into the fact that he arrested [the defendant] and there was a trial and acquittal because the defense is going to need to bring that up for their side, I would think, that there was never a conviction, but anyway, we'll cross that when we get to it, I suppose.

The trial court found that Mr. Heath's testimony regarding what he observed during the 2013 alleged assault was "consistent enough" with Deputy Calhoun's testimony to determine that the witnesses were referencing the same event. Therefore, Mr. Heath was permitted to testify regarding "his observations of a scuffle between the defendant and [the victim] on December 6, 2013," and how he witnessed the defendant "choking and 'boot[ ]stomping'" the victim. The court determined that Mr. Heath's testimony was relevant to the material issues of intent and motive and the probative value was high. Further, the court held that the prejudicial effect did not outweigh the probative value, and that based on the testimonies of Deputy Calhoun and Mr. Heath, there was clear and convincing evidence of the 2013 alleged assault. The trial court also held that Ms. Jackson could testify about the defendant's alleged threats against herself and the victim and that the evidence was admissible under the theory that they were relevant to show the defendant's intent or motive. Additionally, the trial court determined that the prejudicial effect of the evidence of the threats did not outweigh its probative value.

The defendant did not request a limiting instruction regarding any prior bad act evidence, including the evidence of the 2013 alleged assault.

### B.      Jury Trial

The State's proof showed that the defendant called 9-1-1 at 12:36 a.m. on April 18, 2015[6] and stated that the victim shot herself. Later on the call, he stated that he had "been asleep" and "[the victim] got up and was . . . pointing the gun at [him,] and the next thing [he] knew the gun went off." Multiple law enforcement officers testified that they recovered one bullet at the scene that appeared to have traveled at a downward angle through the victim's body, into the recliner chair she was seated in, through the base of the wall, and into a cabinet in the next room. According to the officers, based on the trajectory of the bullet and the type of gun that was used, it was more likely a homicide than a suicide

---

[6] Throughout the trial, the State, defense counsel, and witnesses refer to the victim's death as having occurred on April 18 or April 19. According to the record, the 9-1-1 call was placed at 12:36 a.m. in the early morning hours of April 18. For purposes of this opinion, we will refer to April 18 as the day of the victim's passing.

because it would have been very difficult to fire the gun with one hand at the entrance wound location.

Additionally, the State's proof showed that the defendant made multiple inconsistent statements regarding the events leading up to the victim's death. At the scene, the defendant's written statement described that he was "[i]n bed. Heard shot. Got up. Found [the victim] in chair shot in chest." He also stated that the victim had been drinking that night and talked about harming herself and that she had a history of depression. On May 12, 2015, law enforcement took another written statement from the defendant that read:

> I was asleep in bed alone. I woke by [the victim] made [sic] noise in living room. Looked to see, gun missing. Go into living room. Found her in the chair with the gun cocked in her lap. She then picked it up and turned it towards herself with [sic] pointed at her chest. I tried to take it away from her when it went off. Shoot [sic] her in the chest. She held it with both hands. I grabbed the gun by the handle to try to take it away. It went off. Shoot [sic] her in the chest.

Despite the inconsistencies in the defendant's statements, law enforcement officers admitted that the defendant's theory that he entered the room from behind the victim, saw her with the firearm, and then "tussle[d]" with her over the gun before it went off was possible. One law enforcement officer testified that he did not believe there was any evidence of premeditation on the defendant's behalf. During direct and cross-examination, law enforcement and defense counsel used a dummy gun to demonstrate a number of scenarios that could have resulted in the same downward trajectory and entrance wound, one as a result of homicide and one as self-inflicted.

The State's forensic evidence showed that samples taken from the defendant's hands tested positive for gunshot residue, and samples taken from the victim's body showed that the gunshot wound was likely a close-range or contact wound. The medical examiner testified that the victim's blood alcohol level was .239. Additionally, he determined that the position of the wound would be an "atypical" point of suicide on the body and the path of the bullet through the victim's body made it statistically more likely to be a homicide; however, the medical examiner determined that the results of the autopsy were inconclusive as to manner of death.

Regarding the 2013 alleged assault, the State's proof consisted of Mr. Heath's and Deputy Calhoun's testimony, both consistent with their pre-trial testimony. Before Mr. Heath testified, defense counsel renewed his objection on relevance grounds, and the Court

- 9 -

overruled the objection "on the same grounds that were previously mentioned[]" in the pre-trial hearing. Defense counsel did not request, and the trial court did not provide, a limiting instruction to the jury concurrently with the testimony of either witness.

The victim's sisters, Ms. Jackson and Ms. Duncan, also testified consistently with their pre-trial testimony regarding alleged threats made by the defendant, the victim's state of mind leading up to her death, and their knowledge of the defendant and victim's relationship. On cross examination, defense counsel questioned the victim's family members and Deputy Calhoun about the victim recanting her statement from the night of the 2013 alleged assault. The family members stated that the victim may have lied at trial out of fear or because she wanted to keep the defendant from going to prison. The family members admitted that the victim had a drinking problem and mental health issues related to depression, but they all believed that the victim wanted to get out of the relationship with the defendant and move out of his home. Ms. Jackson reiterated that she was fearful of the defendant and believed his threat that he would shoot at her car if she pulled into his driveway, but she admitted that she did not know if the other threat to "take care of both of them" was directed at her, the victim, or simply heard out of context.

While questioning Mr. Heath, Deputy Calhoun, and Ms. Duncan, defense counsel entered a transcript of the victim's testimony from the 2013 alleged assault into evidence. In the transcript, the victim stated: "I told [Deputy Calhoun] that I had broke [sic] my ribs and that happened when I fell off the porch because of being intoxicated. And out of anger I think I said some other things." The trial transcript also showed that the victim testified that the defendant never punched, kicked, or choked her, and that she was worried on December 6 that the defendant would kick her out because she was drinking too much.

In addition, defense counsel alluded to the fact that the jury found the defendant not guilty of the 2013 alleged assault by saying that "the jury of [twelve]" must have been "a liar" if what Mr. Heath and Deputy Calhoun are saying happened is true. Defense counsel also stated that the "jury . . . saw it a little different" when referring to the "story" that the defendant "boot stomped and choked" the victim. When questioning Ms. Duncan, defense counsel asked whether Ms. Duncan wanted the court to believe her story and "not what the jury found" during the 2013 alleged assault trial.

The State rested and the defendant moved for a judgment of acquittal or, in the alternative, to dismiss "the first count of premeditated murder and leave[] the jury with the remaining counts." The court denied the motion.

As part of cross-examining the State's witnesses, the defendant presented proof from his close friend, Jeff Proctor, and his ex-wife, Connie Jarman. Mr. Proctor, who was drinking with the defendant and the victim on April 17, 2015, testified that he did not observe any fighting or bickering between the defendant and the victim and never heard the defendant make any threats against the victim or her family. Connie Jarman described the defendant as a "loving husband" and a "quiet, kind of keep to himself kind of person." She never experienced any physical violence in their relationship, and she did not know of any problems or physical violence between the defendant and his second wife who died of cancer. Ms. Jarman agreed that it would be out of character for the defendant to harm a woman or the person he was with. On cross-examination, Ms. Jarman stated that she did not know or have any first-hand knowledge about whether the victim and the defendant had any problems in their relationship.

During closing arguments, the State argued that the relationship between the defendant and the victim was "riddled with control and abuse." While the State did not directly address the 2013 alleged assault charge, it did refer to the couple's "violent past" and the "cycle of domestic violence" in their relationship. The State posited that the victim "stayed with him out of fear . . . [or] out of possibly necessity," but in reality the victim was abused and wanted to leave the defendant. Relying on the family members' testimony, the State argued that there was sufficient evidence to show the victim wanted to leave the defendant and the defendant intentionally killed the victim.

Defense counsel emphasized his theory that the victim was holding the gun when it went off and that everything happened in an instant. He argued that suicide was the "most plausible explanation" due to the victim's depression and alcohol or drug consumption. He further referred to the fact that the State's own witness admitted that there was no evidence of premeditation. Moreover, he argued that the defendant never had the "intent to kill" the victim and that he did not care whether the victim lived with him or not. Lastly, defense counsel argued that the 2013 alleged assault was just the State concocting a story to get the jury "to believe something now based on a trial that [the State] lost. [Twelve] people said it didn't happen."

On rebuttal, the State argued that premeditation and deliberation were shown in the defendant and victim's history of violence in their relationship. The State focused on Mr. Heath's testimony about how he saw the victim come "flying out the door and [the defendant] had his hands around her neck." When the two landed, "[the defendant] got up and boot stomped her." The State argued that the deputy who responded in 2013 testified consistently with the victim's initial statements on the scene and injuries on the night of the incident, even if the victim changed her story at trial.

- 11 -

Before the trial court charged the jury, both parties were given time to review the instructions, and neither party offered an objection. The defendant did not request a limiting instruction regarding the evidence of the 2013 alleged assault, and the trial court did not include any limiting instructions on its own. The jury convicted the defendant of the lesser included offense of voluntary manslaughter. After a hearing, the trial court sentenced him to five years to be served in the Tennessee Department of Correction. The defendant's motion for a new trial was denied, and he appealed his conviction and sentence to the Court of Criminal Appeals.

## C.  Court of Criminal Appeals

The defendant raised five issues on appeal. Ultimately, the Court of Criminal Appeals held that "the trial court committed reversible error in admitting evidence of a prior criminal offense for which the [d]efendant was acquitted and evidence of the [d]efendant's prior threats against the victim's sister." State v. Jarman, No. M2017-01313-CCA-R3-CD, 2018 WL 5885903 (Tenn. Crim. App. Nov. 8, 2018), perm. app. granted (Tenn. Mar. 27, 2019).[7] The court reasoned that the prior criminal offense should have been excluded under this Court's holding in State v. Holman, 611 S.W.2d 411 (Tenn. 1981), which determined that "'the effect of the acquittal is to render less than 'clear and convincing' the proffered evidence that the defendant committed the prior crime and the probative value of such evidence cannot be said to outweigh its prejudicial effect upon the defendant.'" Id. at *11 (quoting Holman, 611 S.W.2d at 413). Therefore, because the acquitted-act evidence could not meet the "clear and convincing" standard under Rule 404(b), the evidence should not have been admitted. Id.

Additionally, the court held that admitting the acquitted-act evidence was not harmless because "more than a mere inference of the [d]efendant's prior crime was admitted. Instead, Mr. Heath testified in detail regarding the alleged assault, and Deputy Calhoun testified regarding his observations of the victim following the assault and regarding the victim's statement, which she later recanted." Id. at *12. The court reasoned that because of the "vast amount of highly prejudicial evidence concerning the alleged assault that was admitted and the circumstantial evidence presented at trial," this "error more probably than not affected the outcome of the trial." Id. (citations omitted).

---

[7] Defendant did not raise any issues related to the trial court's failure to give a limiting instruction on appeal to the Court of Criminal Appeals.

In addition to the acquitted-act evidence, the court also held that it was harmful error for the trial court to admit the defendant's alleged threats against Ms. Jackson. Id. at *13. The court reasoned that "[a]lthough bad acts against a third party can be relevant where there is a link between such acts and the offense at hand . . . any link between threats against the victim's sister and the victim's death is speculative and too far removed to be relevant." Id. (citing State v. Caronna, No. W2013-00845-CCA-R3-CD, 2014 WL 6482800, at *40 (Tenn. Crim. App. Nov. 18, 2014); State v. Bailey, No. W2004-00512-CCA-R3-CD, 2005 WL 1215965, at *6 (Tenn. Crim. App. May 20, 2005)). Despite the second threat Ms. Jackson referred to, during which the defendant allegedly stated he would take care of "both of them," the court held that there was no context given "as to whom the defendant was referring, and Ms. Jackson herself testified that she did not know the meaning of this statement." Id. Therefore, the court concluded that although the error in admitting the threats "alone may have been harmless, when viewed in conjunction with the erroneous admission of the prior alleged 2013 assault, the error in admitting these prior threats [was] not harmless." Id. The court reversed the trial court's judgment and granted the defendant a new trial.

The State sought permission to appeal to this Court, arguing that we should reconsider Tennessee's categorical ban on the use of acquitted-act evidence and overturn our prior holding in Holman. The State proposes that this Court adopt the majority rule among jurisdictions that allows for acquitted-act evidence to be admitted under certain circumstances and that the protections offered in Tennessee Rule of Evidence 404(b) are sufficient to ensure the defendant is not overly burdened with unreliable and irrelevant evidence. In addition, the State argues that, if this Court were to adopt a new rule overruling Holman, the trial court properly admitted the evidence of the defendant's actions in the 2013 alleged assault under Rule 404(b). The defendant argues that the Holman rule is the only fair standard that ensures defendants are not burdened with relitigating issues or charges when a jury has already determined there was insufficient evidence to convict. Additionally, the defendant contends that the trial court did not properly follow the procedures of Rule 404(b) and failed to state the material issue for which the evidence of the 2013 alleged assault was relevant.

## II. ANALYSIS

The first issue on appeal—whether Tennessee should continue to apply the rule from Holman and ban the use of acquitted-act evidence against a defendant in a later trial— is a question of law, which we review de novo with no presumption of correctness. State v. Al Mutory, 581 S.W.3d 741, 744 (Tenn. 2019) (citing Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)). The second issue on appeal—whether the trial court

erred in admitting the acquitted-act evidence under Rule 404(b)—is reviewed under an abuse of discretion standard, so long as the trial court "substantially complied with Tenn[essee] R[ule] [of] Evid[ence] 404(b)." State v. Clark, 452 S.W.3d 268, 287 (Tenn. 2014) (citing State v. Kiser, 284 S.W.3d 227, 288–89 (Tenn. 2009); State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997)). An abuse of discretion occurs when the trial court "applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." Id. (citing State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008)).

## A. Acquitted-Act Evidence and State v. Holman

Evidentiary issues related to character evidence and evidence of a defendant's "other crimes, wrongs, or acts" in a criminal trial are frequent topics of pre-trial litigation and are often the subject of appeal in our appellate courts. Even before the adoption of the Tennessee Rules of Evidence in 1990, our courts developed a vast amount of case law in this area, and the general rule emerged that, "in a criminal trial[,] evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible because it is irrelevant." Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980) (emphasis removed) (citing Mays v. State, 238 S.W. 1096 (Tenn. 1921); Lee v. State, 254 S.W.2d 747 (Tenn. 1953)). Admitting such evidence "often constitutes prejudicial error, requiring the reversal of a conviction." Id. (citing Gray v. State, 235 S.W.2d 20 (Tenn. 1950)). However, if the evidence "is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted." Id. (emphasis removed). Our courts have announced several such "relevant issues"—motive, intent, or identity of the defendant; absence of mistake or accident; or to show a scheme, plan, or ongoing conspiracy—as acceptable bases for which to admit evidence of a prior bad act of the defendant. See Collard v. State, 526 S.W.2d 112, 114 (Tenn. 1975); Carroll v. State, 370 S.W.2d 523, 529 (Tenn. 1963). As early as 1950, this Court

> stressed that evidence that the defendant had committed a crime other than that on trial was not admissible unless such evidence tended directly to prove his guilt of the offense with which he was charged and that to render such evidence of another crime relevant to the case on trial, its purpose and its effect must be to show more than the mere fact that the defendant is the kind of person who would not scruple to commit the kind of offense with which he is charged and that probative force could not be accorded to the mere fact

that the defendant, either prior or subsequent to the commission of the offense on trial, had committed another like crime.

Bunch, 605 S.W.2d at 229 (citing Harris v. State, 227 S.W.2d 8 (Tenn. 1950)).

In 1981, nine years before Tennessee adopted its Rules of Evidence, this Court held in State v. Holman that "evidence that the defendant committed an alleged crime other than that for which he is on trial should not be admitted when he has been acquitted of such alleged other crime." 611 S.W.2d at 413 (citations omitted). The Holman Court reasoned that:

> the effect of the acquittal is to render less than "clear and convincing" the proffered evidence that the defendant committed the prior crime and the probative value of such evidence cannot be said to outweigh its prejudicial effect upon the defendant. For such evidence to have any relevance or use in the case on trial, the jury would have to infer that, despite the acquittal, the defendant nevertheless was guilty of the prior crime. No such inference can properly be drawn from an acquittal, particularly from an acquittal based on insufficient evidence to sustain a guilty verdict . . . .

Id. Furthermore, the Court stated that allowing acquitted-act evidence to be used against a defendant in a subsequent trial would require the defendant to "defend himself not only against the charge at hand but also against inferences that the jury might draw from the evidence that he committed the prior crime although he has been acquitted of it." Id. At the time, the Court recognized that their decision to ban acquitted-act evidence was among the minority in state jurisdictions. Id.[8]

---

[8] The Holman Court relied on cases from Arizona, Illinois, Kentucky, and the Third Circuit Court of Appeals to support its reasoning. See United States v. Keller, 624 F.2d 1154 (3d Cir. 1980); State v. Little, 350 P.2d 756 (Ariz. 1960); People v. Ulrich, 195 N.E.2d 180 (Ill. 1963); Asher v. Commonwealth, 324 S.W.2d 824 (Ky. 1959). Since Holman was decided in 1981, however, all of these jurisdictions have since revisited the issue of admitting acquitted-act evidence and do allow its use in some limited circumstances. See, e.g., United States v. Blyden, 964 F.2d 1375, 1379–80 (3d Cir. 1992) (holding that acquitted-act evidence could not be barred on the basis of collateral estoppel and may be admitted or excluded under Federal Rules of Evidence 403 and 404(b)); State v. Yonkman, 312 P.3d 1135, 1140 (Ariz. Ct. App. 2013) (holding that it was not error to admit acquitted-act evidence against a defendant in a subsequent trial so long as the evidence met evidentiary requirements under Arizona law); People v. Ward, 952 N.E.2d 601, 612 (Ill. 2011) (reversing and remanding for a new trial and directing the trial court that the defendant was permitted to enter evidence of his acquittal in response to witness testimony about his acquitted conduct); Leach v. Commonwealth, 571 S.W.3d 550, 556 (Ky. 2019) (citation omitted) ("[T]his Court has held that even an acquittal does not necessarily bar admission of other bad act evidence.").

The principles from this line of case law culminated in the formation of Tennessee Rule of Evidence 404, which governs the admissibility of "character evidence generally" and "other crimes, wrongs, or acts." Tenn. R. Evid. 404 (Adopted effective Jan. 1, 1990 and amended effective July 1, 2003 and July 1, 2009). The development of section (b) to Rule 404 is attributed to our holding in State v. Parton, 694 S.W.2d 299 (Tenn. 1985), which set out procedural requirements for the trial court when analyzing "other crimes, wrongs, or acts" of the defendant. See Tenn. R. Evid. 404(b) & cmt. 1991.

The Parton Court stated that if the evidence is relevant and admissible for some purpose other than proving action in conformity with a character trait, such as motive or intent, then the trial judge should conduct a hearing outside the presence of the jury to "determin[e] whether or not the proof of commission of the prior crime and defendant's connection therewith" meets a clear and convincing standard. Parton, 694 S.W.2d at 303 (citing Wrather v. State, 169 S.W.2d 854 (Tenn. 1943)). If so, the judge should weigh "whether or not [the evidence's] prejudicial effect outweigh[s] its probative value." Id. (citing Bunch v. State, 605 S.W.2d 227 (Tenn. 1980)). Rule 404(b) currently states:

(b) **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b) (2019).

- 16 -

In this case, the State asks us to review the admissibility of a specific form of "other act" evidence: acquitted-act evidence, meaning evidence pertaining to an act for which the defendant was tried and acquitted. We conclude that it is the appropriate time to revisit this issue as Tennessee has remained in the minority of jurisdictions on the matter since deciding Holman,[9] and the facts of this case squarely present the issue for consideration. See State v. Little, 402 S.W.3d 202, 214 (Tenn. 2013) (recognizing "that the holding in Holman represent[ed] a minority rule among the states" but chosing "not to revisit Holman until the issue [wa]s squarely before [the Court]"); State v. Bigoms, No. E2015-02475-CCA-R3-CD, 2017 WL 2562176, at *23 (Tenn. Crim. App. June 7, 2017); see also State v. Shropshire, 45 S.W.3d 64 (Tenn. Crim. App. 2000).

Since 1981, the Court has extended the Holman rule to prohibit the State from introducing evidence of the acquittals of two witnesses offered to rebut a defendant's theory that the two witnesses were the actual perpetrators of the crime. State v. Turner, 352 S.W.3d 425, 430 (Tenn. 2011). Our courts have declined to extend the rule in the context of sentencing, holding that the same concerns regarding acquitted-act evidence being used in a jury trial do not "apply equally to a sentencing hearing conducted by a trial court." State v. Desirey, 909 S.W.2d 20, 31 (Tenn. Crim. App. 1995) (citations omitted) (stating that "[a]n acquittal is normally not considered for evidentiary purposes to equate with factual innocence, only with the existence of reasonable doubt"; therefore, "an acquittal is not viewed to negate the possibility that criminal involvement may be shown to have existed by a preponderance of the evidence").

More recently, in State v. Little, we declined to extend the rule after a defendant was granted a "partial acquittal" at trial on three charges that were being tried jointly. 402 S.W.3d at 212–14. The defendant advocated to apply the rule from Holman and exclude

---

[9] Aside from Tennessee, Florida, Minnesota, Nevada, and North Carolina are jurisdictions that consider it error to admit acquitted-act evidence at a subsequent trial. See, e.g., State v. Perkins, 349 So. 2d 161, 163–64 (Fla. 1977) ("[W]e hold that evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial."); State v. Wakefield, 278 N.W.2d 307, 309 (Minn. 1979) ("[W]e conclude that under no circumstances is evidence of a crime other than that for which a defendant is on trial admissible when the defendant has been acquitted of that other offense."); McMichael v. State, 638 P.2d 402, 403 (Nev. 1982) ("Although we do not hold that the introduction of such evidence violates the double jeopardy clause of the fifth amendment, we do hold that the considerations of fair play underlying the double jeopardy principle militate strongly against the evidence's admissibility.") (footnote omitted); State v. Scott, 413 S.E.2d 787, 790 (N.C. 1992) (holding that, aside from one narrow exception, the prosecution is not permitted to admit evidence of a defendant's prior bad act for which he was acquitted at previous trial).

the conduct related to the acquitted charges, or, in the alternative, apply a rule from Rhode Island that requires the judge to inform the jury of the acquittals. Little, 402 S.W.3d at 213–14 (citing State v. Andujar, 899 A.2d 1209, 1219–22 (R.I. 2006); State v. Bernier, 491 A.2d 1000, 1005–06 (R.I. 1985)). At the time, we declined to revisit Holman or adopt Rhode Island's alternative rule on the basis that the facts of Little and Holman were distinguishable and presented two separate issues. In Little, the defendant was tried jointly for three charges and acquitted of two charges at the same trial. In Holman, the defendant was tried for one offense, acquitted of that offense and charged for a second, separate offense in which the State attempted to introduce the conduct related to the acquittal in the first trial as evidence in the second trial.

Unlike Little, the facts of this case align to those faced in Holman: the defendant's conduct during a previous trial on a charge for which he was acquitted—the 2013 alleged assault—was subsequently introduced at a separate, subsequent trial on a different charge—murder of the victim.

The United States Supreme Court first addressed the issue of using acquitted-act evidence in a subsequent trial, starting in Ashe v. Swenson, 397 U.S. 436 (1970), in which the Court determined that:

> [w]here a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.

Ashe, 397 U.S. at 444 (internal quotation marks omitted). The Ashe Court held that collateral estoppel, "the principle that bars relitigation between the same parties of issues actually determined at a previous trial," was "a part of the Fifth Amendment's guarantee against double jeopardy." Id. at 442.

Twenty years later, in Dowling v. United States, 493 U.S. 342 (1990), the Supreme Court held it would not "extend Ashe[ ] and the collateral-estoppel component of the Double Jeopardy Clause to exclude *in all circumstances* . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted." Dowling, 493 U.S. at 348 (emphasis added). The Court reasoned that this holding was "consistent with other cases where [it] ha[d] held that an acquittal in a criminal case does not preclude the

- 18 -

Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." Id. at 349 (citing United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984)). The Court also held that the introduction and use of acquitted-act evidence does not inherently violate principles of fundamental fairness under the Due Process Clause of the Fifth Amendment of the United States Constitution; therefore, it was acceptable "to deal with the potential for abuse through non[-]constitutional sources like the Federal Rules of Evidence." Id. at 352.

The Dowling Court also addressed four other important issues. First, the Court reasoned that acquitted-act evidence is not inherently unreliable because "the jury . . . remain[s] free to assess the truthfulness and the significance of [the acquitted-act testimony], and [the defendant] ha[s] the opportunity to refute it." Id. at 353. Second, there is no unacceptable risk of conviction based on inferences drawn from the acquitted conduct because of "the trial court's authority to exclude potentially prejudicial evidence" under the Rules of Evidence. Id. Third, the Court determined that there was no issue with potentially inconsistent jury verdicts because, due to the trial court's review of the record in the prior proceeding, "the jury's verdict in [the] second trial [does] not entail any judgment with respect to offenses charged in [the] first." Id. Regardless, the Court stated, "inconsistent [jury] verdicts are constitutionally tolerable." Id. at 353–54 (citing Standefer v. United States, 447 U.S. 10, 25 (1980)). Fourth, the Court reasoned that because it believed the Double Jeopardy Clause provides sufficient protections to defendants from having "to defend against the same accusation in a subsequent proceeding," it was not necessary to extend additional constitutional protections in this context. Id. at 354.

State and federal jurisdictions vary in their interpretation and implementation of these principles. See Little, 402 S.W.3d at 214, n.7 (citation omitted). We are aware that some states and federal jurisdictions apply a collateral estoppel test following Ashe that precludes acquitted-act evidence from being used in a later trial if the defendant is able to show "that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict." United States v. Cala, 521 F.2d 605, 608 (2d Cir. 1975). This analysis requires the trial court to examine the record of the prior proceedings to determine "whether a 'rational jury' could have acquitted [the defendant] in the first trial for similar, non-preclusive reasons." United States v. Zemlyansky, 908 F.3d 1, 12 (2d Cir. 2018) (citing Ashe, 397 U.S. at 444). See United States v. Rigas, 605 F.3d 194, 218 (3d Cir. 2010) (affirming the application of the procedure in Ashe requiring the examination of the trial court record from the previous proceeding); United States v. DeVincent, 632 F.2d 147, 154 (1st Cir. 1980) (citing to the procedure from Ashe when describing the court's analysis of the collateral estoppel issue).

- 19 -

On the other hand, the majority of state jurisdictions hold that:

> otherwise relevant and admissible evidence of another offense is not rendered inadmissible by the fact of the defendant's previous acquittal of that other offense, except to the extent that the acquittal may be a factor to be weighed in the discretionary balancing by the trial judge of the probative value of the evidence against its unfairly prejudicial effect, and in determining the threshold question of whether the evidence is sufficiently convincing to warrant its admission.

Christopher Bello, Annotation, Admissibility of Evidence as to Other Offense as Affected by Defendant's Acquittal of That Offense, 25 A.L.R. 4th 939, § 2[a] (1993, Supp. 2008) [hereinafter Admissibility of Evidence as to Other Offense]. The states that apply the majority rule generally do so using the procedures or standard for admitting prior bad acts by the defendant in the state's rules of evidence and require trial judges to determine whether the acquitted-act evidence is relevant to a material issue other than the defendant's propensity to commit the charged crime and whether the prejudicial effect of the evidence outweighs its probative value. See, e.g., Kinney v. People, 187 P.3d 548, 554 (Colo. 2008) ("Prior act evidence can be admitted even though the defendant was acquitted of the criminal charges arising out of the act, provided that the trial court is satisfied by a preponderance of the evidence . . . that the prior act occurred and the evidence otherwise complies with the four-prong test for admissibility under [Colorado evidence laws]."); State v. Atkins, 819 S.E.2d 28, 33–36 (Ga. 2018) (holding that the Georgia Rules of Evidence and procedures therein govern the admissibility of other acts evidence, and that the "collateral estoppel test" and "the Double Jeopardy Clause bar a second trial only where, to convict the defendant, the second jury would have to reach a conclusion 'directly contrary' to that reached by the first jury"); Commonwealth v. Woods, 607 N.E.2d 1024, 1031–32 (Mass. 1993) (holding that the collateral estoppel doctrine only "applies to factual issues, not evidence[,]" and so long as factual issues have not been precluded under the doctrine, the rules of evidence and relevancy govern the admissibility of other acts); State v. J.M., Jr., 137 A.3d 490, 499 (N.J. 2016) (citation omitted) (holding that "acquitted-act evidence may only be admitted after a vigorous . . . analysis" under New Jersey evidence law and that "the fact that a defendant was acquitted of the prior crime will often weigh heavily against a finding that the evidence of that crime is 'clear and convincing'").

Turning to the case at hand, the State urges this Court to join the majority and adopt a standard similar to that announced in New Jersey, which allows acquitted-act evidence to be admitted at trial after strenuous analysis under a four-part test. See J.M., 137 A.3d at

496–99 (citing State v. Cofield, 605 A.2d 230, 235–36 (N.J. 1992)).  New Jersey's four-part test requires:

1) the evidence of the other crime must be admissible as relevant to a material issue;
2) [the evidence] must be similar in kind and reasonably close in time to the offense charged;
3) [t]he evidence of the other crime must be clear and convincing;
4) [t]he probative value of the evidence must not be outweighed by its apparent prejudice.

Id. at 496 (citing Cofield, 605 A.2d at 235).  If the party seeking to admit the evidence is successful in carrying its burden to establish the admissibility of the evidence, and the trial court determines that the probative value outweighs the prejudicial effect, "the court must instruct the jury on the limited use of the evidence."  Id. at 496–97 (quoting Cofield, 605 A.2d at 236).

The State argues that Tennessee's current categorical ban does not allow the jury to hear all relevant information and "any special unfairness inherent in the admission of acquitted-act evidence can be obviated . . .by allowing the defendant to inform the jury of the acquittal."  Appellant's Brief at 12–13 (filed Apr. 25, 2019), No. M2017-01313-SC-R11-CD.  The defendant argues that the Holman rule is the only way to ensure that criminal defendants are not potentially relitigating their guilt or innocence for a crime when another competent jury has already acquitted them of the act.  Relying on Justice Brennan's dissent in Dowling, the defendant contends that acquitted-act evidence is overly prejudicial and, if admitted, places an undue burden on the defendant to avoid conviction a second time by having to present evidence to rebut the prosecution's theory that the acquitted conduct occurred and that the acquitted-act evidence is somehow relevant to the charged crime.  Appellee's Brief at 13 (filed May 28, 2019), No. M2017-01313-SC-R11-CD (citing Dowling, 493 U.S. at 362–63 (Brennan, J., dissenting)).

We agree with the State and are persuaded to join the majority of state jurisdictions.  Similar to New Jersey's four-part test, Tennessee Rule of Evidence 404(b) provides a structured framework to analyze acquitted-act evidence that ensures thorough consideration before admitting any prior act evidence.  Rule 404(b) requires trial judges to conduct a jury-out hearing to examine the evidence, explicitly state on the record the relevant and material purpose for which the prior bad act is being admitted, and balance whether, despite the evidence being relevant, the prejudicial effect of the evidence outweighs the probative value.  See Tenn. R. Evid. 404(b).  The trial court also must find

- 21 -

that the evidence of the prior bad act is clear and convincing. Id. ("The court must find proof of the other crime, wrong, or act to be clear and convincing[.]"). While we recognize that we are asking trial judges to conduct a familiar test, we take this opportunity to acknowledge a directive given by the New Jersey Supreme Court with regard to the analysis of acquitted-act evidence specifically:

> [T]here are limited circumstances in which acquitted-act evidence is both highly probative and not unduly prejudicial to a defendant, and therefore may be admissible. As with all other-crime evidence, acquitted-act evidence may only be admitted after a vigorous . . . analysis. With respect to . . . the "clear and convincing evidence requirement, . . . the fact that a defendant was acquitted of the prior crime will often weigh heavily against a finding that the evidence of that crime is "clear and convincing."

J.M., 137 A.3d at 499 (citation omitted). We reiterate that Rule 404(b) is a rule of exclusion, and the analysis deserves the utmost scrutiny in order to protect the fairness of the criminal trial. See State v. Jones, 450 S.W.3d 866, 891 (Tenn. 2014). We are confident that our trial courts can strike an appropriate balance between ensuring that jurors have all relevant and admissible information in order to fairly assess the evidence presented and apply the law to the facts of the case, while also protecting criminal defendants against the use of irrelevant and overly prejudicial information.

At this time, we explicitly overrule our prior holding in Holman to the extent that it can be read to exclude acquitted-act evidence under all circumstances, and we bring Tennessee in line with the majority of states by holding that evidence of a defendant's conduct for which he was acquitted in a previous trial may be introduced in a subsequent trial on a different charge only after the evidence has met the requirements of Tennessee Rule of Evidence 404(b). The inquiry, however, does not end there. We now must address an equally important issue: whether the defendant in all cases is entitled to present evidence of his or her acquittal to the jury or have the jury instructed by the trial court that he or she was acquitted of the prior act.

### B. Proof of the defendant's acquittal and limiting instructions

The State suggested in its brief to this Court that "[a]llowing the defendant to inform the jury of the prior acquittal . . . would reduce the risk of unfair prejudice, which is always a concern when introducing Rule 404(b) evidence." Appellant's Brief at 14 (filed Apr. 25, 2019), No. M2017-01313-SC-R11-CD (citing Hess v. State, 20 P.3d 1121, 1125 (Alaska 2001); Kinney, 187 P.3d at 557; Commonwealth v. Barboza, 921 N.E.2d 117, 120 (Mass.

App. Ct. 2010)). The New Jersey rule, cited in the State's brief, requires the trial court to give a limiting instruction for all prior act evidence and, in the case of acquitted conduct, also requires the trial court, upon request by the defendant, to inform the jury of the acquittal by separate instruction. See J.M., 137 A.3d at 497; N.J. J.I. Crim. Non 2C Charges.

We begin by acknowledging that there are two distinct issues presented here. First is whether the defendant may elicit proof that he or she was acquitted of the prior charge, for example, through cross-examination of a witness. Second is a set of separate instructions given by the trial court that not only limits the purpose for which the evidence may be considered but also informs jurors that the defendant was acquitted of the prior act. We believe that both protections could be appropriate or even necessary depending on the circumstances of the case.

The majority of state jurisdictions hold that the defendant should be permitted to elicit some proof of the acquittal if acquitted-act evidence is admitted against him at trial.[10] See Admissibility of Evidence as to Other Offense, supra, at § 2[a]; see also People v. Ward, 952 N.E.2d 601, 611 (Ill. 2011) (citation omitted) (holding it was an abuse of discretion not to admit acquittal evidence "[g]iven the real possibility the jury would convict defendant based on his alleged prior bad acts alone, [so] barring the acquittal evidence further enhanced the already high danger of undue prejudice against him");

---

[10] If the jurisdiction follows the minority approach, and only allows acquitted-act evidence after following the "collateral estoppel" test announced in Ashe, "the uniform rule appears to be that the defendant is not entitled to prove his acquittal. The logic . . . is simply that the prior verdict is of no relevance once it has been determined that [the first trial] did not necessarily resolve the contested issue." Admissibility of Evidence as to Other Offense, supra, at §2 [a]. See, e.g., United States v. Kerley, 643 F.2d 299, 300 (5th Cir. 1981) (citations omitted) (affirming that acquitted-act evidence was not precluded under double jeopardy or collateral estoppel and that "evidence of a prior acquittal [was] not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meets its burden of proving beyond a reasonable doubt at least one element of the crime"); Prince v. Lockhart, 971 F.2d 118, 122 (8th Cir. 1992) ("There are two primary reasons why a judgment of acquittal is not generally admissible to rebut inferences that may be drawn from evidence that was the basis of the previous trial. First, judgments of acquittal are hearsay. Second, judgments of acquittal are not generally relevant . . . because they do not prove innocence . . . ." (internal citations omitted)). But see Williams v. United States, 77 A.3d 425, 433 (D.C. 2013) (declining to adopt a rule of general inadmissibility of prior acquittal evidence and reasoning that a case-by-case approach was better suited because "[t]he fact that the government failed to meet its burden in a previous trial, while bringing its prosecutorial power to bear directly upon proving that the defendant committed the prior crime, has at least some tendency to prove that the defendant did not do it").

- 23 -

Kinney, 187 P.3d at 558 (reversing and granting a new trial because the state used acquitted-act evidence and the defendant was not permitted to rebut with evidence of acquittal); Hess, 20 P.3d at 1127–29 (holding that is was an abuse of discretion not to admit proof of the defendant's acquittal because it was relevant and fell under a hearsay exception and that due to the high risk of unfair prejudice that may result in admitting acquitted-act evidence, a limiting jury instruction may help to balance the potential confusion of the jury); but see People v. Bolden, 296 N.W.2d 613, 617 (Mich. Ct. App. 1980) (holding that it was not error for the trial court to exclude evidence of the defendant's acquittal because "[t]he fact that another jury harbored a reasonable doubt as to defendant's guilt of the other offense does not negate the substantive value of the testimony to establish identity, scheme, plan, etc. in the case at bar" and "[t]he issue should not be clouded" by the ultimate verdict of the first trial). Further, "[n]early all [state] courts have adopted a case-by-case approach in analyzing requests by the defendant for an acquittal instruction, and appellate courts have reviewed trial courts' refusals to give an acquittal instruction for an abuse of discretion." Kinney, 187 P.3d at 555 (citation omitted); but see Andujar, 899 A.2d at 1220 (concluding that evidence of the defendant's acquittal "must be presented to the jury either by stipulation, by the parties' testimony, or by an instruction from the trial justice" or it is a denial of due process) (emphasis removed) (internal quotations and citation omitted)).

The Colorado Supreme Court in Kinney v. People addressed the issues of "[w]hether to give an acquittal instruction or permit other evidence of the acquittal" and decided that "a per se rule either always requiring an instruction or always ruling such evidence admissible" was inappropriate. 187 P.3d at 557. Instead, Colorado courts make the decision "on a case-by-case basis," within the trial court's discretion. Id. We find the court's explanation enlightening:

> Generally, federal circuits have found no abuse of discretion when trial courts have not given the requested [acquittal] instruction. See, e.g., United States v. Wells, 347 F.3d 280, 285–86 (8th Cir. 2003); United States v. De La Rosa, 171 F.3d 215, 219–20 (5th Cir. 1999); United States v. Smith, 145 F.3d 458, 462–63 (1st Cir. 1998); United States v. Tirrell, 120 F.3d 670, 677–78 (7th Cir. 1997). Indeed, some federal circuits have strongly implied that the acquittal evidence may never be admissible. See Wells, 347 F.3d at 285–86; De La Rosa, 171 F.3d at 219–20. Among the reasons given by these courts are that 1) the evidence is hearsay because it is being offered for the truth of the matter asserted and does not fit into any hearsay exception, 2) it is not relevant because it does not prove innocence—just that the government failed to prove the defendant guilty beyond a reasonable doubt, and 3) the evidence's prejudicial effect substantially outweighs its probative value

because the jury may be confused upon learning that a previous jury had found the defendant not guilty of the prior acts.  See Wells, 347 F.3d at 285–86; De La Rosa, 171 F.3d at 219–20; see also Weinstein's Federal Evidence § 803.24[7], 803–138 to –140 (2d ed. 2008).

Id. at 555.

The Colorado Supreme Court found that generally, state courts, on the other hand:

have ruled that fairness requires that an acquittal instruction be given when the jury is likely to have learned that the defendant was charged criminally for the prior act, noting that Dowling "made a point of saying that the trial judge did tell the jury the defendant had been acquitted of the other offenses." See [People v. ]Bedoya, 758 N.E.2d [366,] 381 [(Ill. App. 3d 2001)]; see also Philmon[ v. State], 593 S.W.2d [504,] 507 [(Ark. Ct. App. 1980)] (holding that it was a reversible error not to instruct the jury of the acquittal when the warrant issued in the prior act's case was mentioned by a witness).  Other courts have found that the acquittal is relevant because it helps the jury weigh the evidence of the prior act and reasonably infer a greater probability of factual innocence because the defendant was acquitted.  See Hess, 20 P.3d at 1125; [People v. ]Griffin, 426 P.2d [507,] 511 [(Cal. 1967)]; Hare[ v. State], 467 N.E.2d [7,] 18 [(Ind. 1984)]; Nolan[ v. State], 131 A.2d [851,] 857–58 [(Md. Ct. Spec. App. (1957), abrogated on other grounds by State v. Jones, 216 A.3d 907 (Md. Ct. Spec. App. 2019)]; Bernier, 491 A.2d at 1005–06.

Regarding the hearsay argument, most states have not even addressed the argument, implying that they either have not considered it or have determined it to be such a settled issue that it does not merit discussion. Among the few states that have considered the issue, they have held that a judgment of acquittal should be treated no differently than any other properly authenticated official document, which is admissible as an exception to the hearsay rule.  See Griffin, 426 P.2d at 510–11; accord 5 John H. Wigmore, Evidence § 1671(a), 806–13 (Chadbourn rev. 1974); see also C.R.E. 803(8) (Colorado's official records exception); cf. Hess, 20 P.3d at 1126 (holding that an acquittal is not hearsay because it is not testimonial, but rather is an act to which the law attaches legal significance, and because it is not offered to show the defendant is innocent, but rather to challenge the weight of the prior act witness's testimony).

- 25 -

Courts have also held that the evidence of acquittal has significant probative value for the jury in weighing the prior act evidence, and thus its value is not substantially outweighed by its prejudicial effect. See Hess, 20 P.3d at 1127–29; Griffin, 427 P.2d at 511. Moreover, other courts have rejected the juror confusion argument, concluding that the risk of confusion is not so great as to prevent the defendant from informing the jury that he was in fact acquitted of the underlying offenses. See Walker[ v. State], 921 P.2d [923,] 927–28 [(Nev. 1996)] (holding that introducing prior act evidence without informing the jury of the acquittal "left the jury with the impression that [the defendant] had been part of a burglary ring and probably guilty of committing all of the crimes mentioned"); [State v. ]Smith, 532 P.2d [9,] 12 [(Or. 1975)].

Id. at 556 (internal parallel citations removed).

We agree with the Colorado Supreme Court that this decision must be determined on a case-by-case basis. Trial judges should continue to consider the specific facts of each case in making decisions regarding the admissibility of evidence, including proof of the defendant's acquittal and any issues that may arise related to relevancy, hearsay, and prejudice. Certainly, like many of our sister courts have found, evidence of the acquittal may be relevant for the jury to determine the credibility of a witness or weigh the proof at trial. In some cases, fairness may require that a defendant be able to cross examine a testifying witness about the result of the previous trial. On the other hand, there also may be times when the evidence the defendant seeks to elicit is for an improper purpose or offends some other rule. The trial court is in the best position to assess the party's evidence and use its discretion to admit or exclude such evidence when necessary. This is part of the important role of the trial court as gatekeeper, and the decision should be made based on the specific facts and circumstances of each case. The trial court's decision to admit or exclude evidence of the acquittal will be reviewed under an abuse of discretion standard. See State v. Davidson, 509 S.W.3d 156, 207 (Tenn. 2016); State v. Gomez, 367 S.W.3d 237, 243 (Tenn. 2012). We do note that, although the trial court retains discretion on the issue of whether to admit evidence of the acquittal after admission of acquitted-act evidence, it would be the rare case, indeed, in which a trial court appropriately could exclude evidence of the acquittal.

Regarding the second issue, the defendant's right to an acquittal jury instruction, we rely on current Tennessee law regarding limiting instructions to guide us. Currently, a defendant is entitled to a limiting instruction, "restricting the evidence to its proper scope," upon request. Tenn. R. Evid. 105 (2019) ("the court *upon request* shall restrict the evidence

- 26 -

to its proper scope and instruct the jury accordingly" (emphasis added)). In the context of prior act evidence, our courts have stated that "limiting instructions are critical in preventing the improper and prejudicial use of proof of other crimes." State v. Howell, 868 S.W.2d 238, 255 (Tenn. 1993) (citation omitted). Therefore, "[t]o minimize the impact of other act evidence and to ensure the jury does not misuse it, the trial court *should* instruct the jury on the proper use of the evidence." Neil P. Cohen et al., Tennessee Law of Evidence, § 4.04(8)(i) (LexisNexis Matthew Bender 6th ed. 2011) (emphasis added) (citing State v. Fisher, 670 S.W.2d 232 (Tenn. Crim. App. 1983); State v. Gilley, 297 S.W.3d 739, 758 (Tenn. Crim. App. 2008)).

Tennessee courts have held, however, that, "[a]s a general rule, no assignment of error based upon omission or inadequacy of the judge's instructions to the jury will be considered unless a special request was tendered." State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982) (citing Crawford v. State, 273 S.W.2d 689, 693 (Tenn. 1954)); see Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978) (holding that the error in failing to give a limiting instruction "must be laid at the defendant's feet" when the defendant fails to request a limiting instruction or object to the omission of the instruction); Howell, 868 S.W.2d at 255–56 (determining that the defendant waived the limiting instruction issue because he did not request the instruction or object to the omission and that the trial court did not commit "fundamental error" in failing to give a limiting instruction regarding prior act evidence because the evidence was relevant to the defendant's guilt and did not implicate hearsay rules). Therefore, it is generally not reversible error for a trial court to omit a limiting instruction if a defendant fails to request one regarding the prior act, and the issue is ordinarily found to be waived on appeal.

With these principles in mind, we find it important to remain consistent with Tennessee's jurisprudence. Acquitted-act evidence is a form of prior act evidence, and an instruction either limiting the scope of the acquitted-act evidence to a particular purpose or informing the jury that the defendant was acquitted of the act must be treated the same. Therefore, we hold that requiring trial courts to give a limiting instruction or an acquittal instruction, even absent a request, in all cases in which acquitted-act evidence is introduced at trial is inappropriate and would be inconsistent with our body of case law regarding prior act evidence and limiting instructions. We stress that it certainly may be the best practice to give both a clear limiting instruction in conjunction with an acquittal instruction in most cases, because, in doing so, the trial court lessens the risk of unfair prejudice and ensures that jurors properly utilize the acquitted-act evidence in reaching their ultimate conclusion about the defendant's guilt or innocence of the charged crime. See Nesbit v. State, 452 S.W.3d 779, 799 (Tenn. 2014).

## C.    404(b) Prior Act Evidence

In the Court of Criminal Appeals, the court correctly applied the Holman rule as binding precedent at the time and held that it was reversible error for the trial court to allow the evidence related to the 2013 alleged assault to be admitted at trial. As a result, the intermediate court did not conduct an analysis of Rule 404(b) related to this issue. Because we now hold that the rule in Holman is no longer good law, and we reverse the Court of Criminal Appeals decision to the extent that it relies on Holman to find reversible error, we must address the second issue argued by the parties: whether the trial court properly admitted the acquitted-act evidence pursuant to Rule 404(b) of the Tennessee Rules of Evidence.

Generally, Rule 404(b) directs the court to exclude evidence of "other crimes, wrong, or acts . . . to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). The evidence may be admitted "for other purposes" when relevant to "issues of identity, intent, continuing scheme or plan, or rebuttal of accident, mistake, or entrapment." State v. Elkins, 102 S.W.3d 578, 583 (Tenn. 2003) (citing State v. Elendt, 654 S.W.2d 411, 413–14 (Tenn. Crim. App. 1983) (citation omitted)); Graybeal v. State, 463 S.W.2d 159, 160 (Tenn. Crim. App. 1970)). However, this list is not exhaustive. When "a trial court substantially complies with the procedures set out in Rule 404(b) for evaluating the admissibility of evidence, the court's decisions will be given great deference on appeal and will be reversed only if the trial court abused its discretion." State v. Dotson, 450 S.W.3d 1, 76–77 (Tenn. 2014) (citing Dubose, 953 S.W.2d at 652).

In this case, the defendant argues that the trial court did not substantially comply with subsection 404(b)(2), which states in relevant part that "[t]he court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence." Tenn. R. Evid. 404(b)(2) (2019). The defendant contends that "[t]he trial court was overwhelmingly vague as to the reason(s) for admitting said evidence, and never clearly established the relevance to any material issue." Appellee's Brief at 16 (filed May 28, 2019), No. M2017-01313-SC-R11-CD. We disagree. During the pre-trial hearing, the trial judge stated that Deputy Calhoun's testimony regarding what he saw when he responded in 2013 to the domestic assault call was relevant to the material issue of "intent or motive." The trial judge also found that "the material issue again [was] intent or motive" with Mr. Heath's testimony regarding the same 2013 incident.

- 28 -

In addition to specifying intent or motive as the relevant material issues, the trial court conducted a jury-out hearing and reserved its ruling until it heard from witnesses with knowledge of the 2013 alleged assault. After the hearing, the trial court determined that the evidence of the 2013 alleged assault was clear and convincing and that the probative value of the evidence outweighed any prejudicial effect. During the jury trial, defense counsel renewed his objection before Mr. Heath's testimony on the subject, and the trial court overruled the objection on the same grounds as stated during the pre-trial hearing. Therefore, we conclude that the trial court substantially complied with procedures in Rule 404(b). Thus, the trial court's decision to admit the evidence will not be disturbed absent an abuse of discretion.

Tennessee trial courts have been cautioned to take a "restrictive approach" when admitting Rule 404(b) evidence because of its high potential to unfairly influence a jury and result in a conviction based on the defendant's overall bad character or believed propensity to commit crimes rather than the strength of the evidence pertaining to the charged offense. Dotson, 450 S.W.3d at 76 (citations omitted). The prejudicial effect of prior act evidence generally "outweighs ordinary relevance" because of the possibility that a jury may convict a defendant based on the belief that "a bad person deserves punishment." Id. (citing State v. Sexton, 368 S.W.3d 371, 403 (Tenn. 2012)).

Despite this general rule of exclusion, Tennessee courts have recognized a "line of cases" that stand for the proposition "that violent acts indicating the relationship between the victim of a violent crime and the defendant prior to the commission of the offense are relevant to show defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim." State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993). See also State v. Gleblock, 616 S.W.2d 897, 905–06 (Tenn. Crim. App. 1981) (citations omitted) (holding that evidence of the defendant's prior break-in at the victim's home and a prior threatening postcard were both relevant because the acts show the "relations existing between the victim and the defendant prior to the commission of the crime" and the acts "indicate[d] hostility toward the victim and a settled purpose to harm or injure her"); State v. Turnbill, 640 S.W.2d 40, 47 (Tenn. Crim. App. 1982) ("[T]he prior relations between the victim and the appellant were relevant matters for the jury's consideration on the question of the appellant's intent.").

The State argues that the evidence of the 2013 alleged assault falls squarely within the "Smith line of cases" that permit prior acts of violence between the defendant and the victim to be admitted to show motive or intent and that the defendant's intent was a material issue in this case because he was charged with first-degree premeditated murder. Further, the State argues, the defendant's theory of the case was that the victim committed suicide,

so the evidence was necessary to rebut that claim. The defendant argues that the trial court erred because the 2013 alleged assault lacked any connection to "any material issue at trial" and motive and intent are not necessary to prove the crime of conviction, voluntary manslaughter. He also argues that the prejudicial effect of the evidence heavily outweighed its probative value.

In State v. Gilley, the Court of Criminal Appeals held that it was not an abuse of discretion for the trial judge to admit evidence of at least six instances of prior violence between the defendant and the victim. 297 S.W.3d at 758–59.

> Tennessee courts have accepted the use of evidence of a homicide defendant's threats or prior violent acts directed toward the homicide victim as a means of allowing the State the opportunity to establish intent. The courts theorize that such evidence is probative of the defendant's mens rea at the time of the homicide because it reveals a "settled purpose" to harm the victim. Specifically, our [S]upreme [C]ourt has ruled that "[v]iolent acts indicating the relationship between the victim of a violent crime and the defendant prior to the commission of the offense are relevant to show defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim."

Id. at 758 (internal citations omitted). While the facts of Gilley are distinguishable in that there were approximately six separate instances of prior violence, and, in this case, there is one prior alleged assault, we do not believe it necessary or wise to draw an arbitrary line regarding how many instances of prior violence in a relationship are necessary before the evidence becomes relevant to show the defendant's animosity toward or intent to harm the victim. We believe that question is better left to the trial judge when analyzing the 404(b) factors, as the court did in this case.

Here, the defendant and the victim were in a close relationship for a number of years and were living in the same household up until the day she died. Mr. Heath testified that he watched as the defendant kicked, choked, and "boot stomped" the victim, and Deputy Calhoun confirmed that the actual markings on the victim's body supported that story, despite the victim changing her story on a later date. The trial court acknowledged that the 2013 alleged assault did happen approximately eighteen (18) months prior to the victim's death but still found the evidence to be probative of the defendant's intent or motive during the time that, according to his own testimony, he tussled with the victim for the gun immediately before it went off. See Gilley, 297 S.W.3d at 758 (concluding that the "State was obliged to prove that the killing of the victim was 'premeditated and intentional'"

- 30 -

under the statute for first-degree murder, and the "evidence of the defendant's prior violent behavior toward the victim was probative of the defendant's intent"). Furthermore, the State was required to prove the defendant's intent as an element of the charged crime, first-degree premeditated murder. See Tenn. Code Ann. § 39-13-202 (2017).

Therefore, as other Tennessee courts have held, the prior act of violence in the defendant and victim's relationship was relevant to the material issue of the defendant's intent and state of mind. We hold that it was not error for the trial court to consider the evidence of the 2013 alleged assault admissible on the issue of intent.[11]

Additionally, the trial court concluded that the probative value of this evidence was not outweighed by the danger of unfair prejudice. In this case, even with the time that had elapsed between the 2013 alleged assault and the victim's death, evidence of the 2013 alleged assault was highly probative on the issue of intent. Although we certainly recognize that this evidence is prejudicial to the defendant, we cannot conclude that the trial court abused its discretion in finding that the probative value was not outweighed by the danger of unfair prejudice.

Having determined that the trial court properly admitted this evidence, this does not end our inquiry. We now review whether the trial court erred in failing to give a limiting instruction regarding the proper purpose for which the jury could consider the evidence of the 2013 alleged assault under the facts of this case. The defendant in this case did not request such an instruction and did not object to the omission of a limiting instruction before the jury was charged at the conclusion of the trial. Furthermore, the defendant did not raise the issue of a limiting instruction in his motion for new trial, on appeal to the Court of Criminal Appeals, or on appeal to this Court. Under these circumstances, we deem the issue waived. See Howell, 868 S.W.2d at 255–56 (citing Tenn. R. App. P. 3(e)) (concluding that while limiting instructions are helpful to prevent the misuse of prior act testimony, the defendant waived the issue "by not requesting a limiting instruction and by not raising the issue in his motion for a new trial"); State v. Sizemore, No. M2013-01853-CCA-R3-CD, 2014 WL 5800747, at *7–8 (Tenn. Crim. App. Nov. 7, 2014) (holding that it was not error for the trial court to fail to instruct the jury on the limited purpose of 404(b) evidence after the defense attorney read through the jury instructions and did not remind the trial judge to include the limiting instruction).

---

[11] The trial court also admitted the evidence on the issue of motive. Because we hold that it was not error to admit the evidence under a theory of intent, we will not discuss the separate issue of motive.

Additionally, we note that the defendant was specifically told during the pre-trial hearing that he was able to admit evidence of the acquittal to the jury during trial. After determining that Deputy Calhoun would be permitted to testify about the 2013 alleged assault, the trial court stated:

> I don't know how, you know, you get around [Deputy Calhoun] not getting into the fact that he arrested [the defendant] and there was a trial and acquittal **because the defense is going to need to bring that up for their side, I would think, that there was never a conviction . . . .**

(Emphasis added).

During cross-examination of multiple State's witnesses at trial, the defendant admitted portions of the victim's testimony from the trial on the 2013 alleged assault in which she recanted her statement from the night of December 6, 2013, and testified that the defendant never assaulted her. Additionally, while not evidence, defense counsel informed the jury in this case on multiple occasions that a jury did not convict the defendant of the 2013 alleged assault. During closing argument, the defendant argued that the evidence of the 2013 alleged assault was "based on a trial that [the State] lost. [Twelve] people said it didn't happen." While it may have been best for the jury to receive instructions from the trial court informing them that the defendant had been acquitted of the 2013 alleged assault, the defendant did not request any special instructions and did not object to the omission of any instructions after reviewing the jury charge. As a result, we find no error on the part of the trial court given the facts and circumstances of this case.

In summary, we hold that the trial court did not abuse its discretion in admitting the acquitted-act evidence for the limited purpose of proving the defendant's intent to harm the victim. We also conclude that the trial court did not err in failing to give a limiting instruction regarding the 2013 alleged assault or in failing to give an acquittal instruction, given that the defendant was able to present evidence of the victim's testimony at the previous trial and jurors were not left to speculate as to the outcome of previous trial. Even if there was error in failing to instruct the jury, it "'must be laid at the defendant's feet.'" Howell, 868 S.W.2d at 256 (quoting Laird, 565 S.W.2d at 40).

### D. Additional evidentiary errors

We recognize that, in addition to finding reversible error under Holman, the Court of Criminal Appeals also held that the trial court erred in admitting evidence that the

defendant made threats to the victim and the victim's sister on two occasions. The Court of Criminal Appeals determined that "any remote probative value [of the threats was] greatly outweighed by the high prejudicial effect in this case." Jarman, 2018 WL 5885903, at *13. The State did not appeal these rulings. However, having reviewed the entire record, we conclude that these errors by the trial court, standing alone, are harmless error. The defendant cannot demonstrate that these errors "more probably than not affected the outcome of the trial." State v. Rodriguez, 254 S.W.3d 361, 372 (Tenn. 2008) (citing State v. Toliver, 117 S.W.3d 216, 231 (Tenn. 2003); State v. Francis, 669 S.W.2d 85, 91 (Tenn. 1984)).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Criminal Appeals and reinstate the defendant's conviction for voluntary manslaughter. We hold that the trial court properly admitted the evidence of the 2013 alleged assault pursuant to Rule 404(b) of the Tennessee Rules of Evidence. Additionally, we conclude that the additional evidentiary errors as to the alleged threats made by the defendant were harmless and do not require reversal. Because the defendant in this case appears to be indigent, costs of this appeal are taxed to the State.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE